BOYNTON v. CHICAGO MILL & LUMBER COMPANY.

Opinion delivered October 28, 1907.

1. BILL OF REVIEW—NEW MATTER.—The fact that the original decree upon which a subsequent decree was based was vacated or set aside after the subsequent decree was rendered constitutes new matter which could not be evidence in the second suit, and which demonstrates error in the subsequent decree correctable by bill of review if relief could not be obtained otherwise. (Page 211.)

2. SAME—WHEN DOES NOT LIE.—Where a decree based upon the plea of *res judicata* was properly reached upon other grounds than such plea, a bill of review would not lie because the decree relied upon as constituting *res judicata* was subsequently vacated. (Page 212.)

3. SAME.—Where a decree relied upon as *res judicata* was either void or inapplicable, or otherwise ineffective as a bar, error of the court in sustaining the plea of *res judicata* may not be reached by bill of review, but by appeal or other appropriate remedy. (Page 212.)

4. JUDGMENTS—CONCLUSIVE THOUGH APPEALED FROM.—A decree may be operative as a bar, though an appeal to a higher court with supersedeas has been taken. (Page 213.)

5. SUIT BASED ON WARNING ORDER—COMMENCEMENT.—A suit based upon constructive service is pending when the complaint is filed and an order is made by the clerk warning the defendant to appear. (Page 214.)

6. JUDGMENT—PURCHASE PENDENTE LITE.—A purchaser of land *pendente lite* is as fully bound by the decree as the parties thereto. (Page 214.)

7. BILL OF REVIEW—NEW MATTER—DILIGENCE.—To support a bill of review for newly-discovered matter, the matter must be such as could not have been discovered by the use of reasonable diligence. (Page 214.)

8. SAME—LACHES.—Failure of a party to a suit to discover that the authenticated copy of a decree filed by his adversary and relied upon as *res judicata* was incomplete, when a complete copy would have shown the invalidity of such decree, is not such laches as will prevent such party from availing himself of the invalidity of the decree upon a bill of review. (Page 214.)

Appeal from Mississippi Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

*W. J. Driver, E. F. Brown* and *Murphy, Coleman & Lewis,* for appellant.

1. The bill as drawn, seeking in one respect to vacate the former decree on account of the manner in which its entry was

obtained and the violation of the agreement upon which the cause was heard, and in other respects being a bill of review proper to bring into the record the fact of the reversal of the Federal court decree, is permissible under the practice in this State. 36 Ark. 532.

The identical title in question here has already been passed upon by both Federal and State courts. 120 Fed. 819; 75 Ark. 415.

2. A purchaser of property *pendente lite* is conclusively bound by the result of the litigation, as much so as if he had been a party to the action from its beginning. 93 U. S. 163; 57 Ark. 229; *Id.* 97; 50 Ark. 551; 38 Ark. 599; 2 Black on Judg. § 550. Where two suits for the same cause of action progress simultaneously, the judgment first rendered will be an absolute bar in the other suit. 76 Ark. 423. The parties, therefore, were bound by the Federal court decree. If it was *res judicata* of the title involved in this suit in its original form, it was likewise *res judicata* as to that title in its final form. That decree not having been reversed until after the rendition of the decree in the present suit, such reversal constitutes a recognized cause for bill of review. 2 Beach, Mod. Eq. 882; 15 Fed. 196; 38 Wis. 107; Black on Judg. § 333. A decree based in whole or in part on a plea of *res judicata* will be reversed on appeal when, pending such appeal, the judgment held to constitute an estoppel is reversed. 129 Fed. 40. And no technicalities will be permitted to prevent relief in the main suit upon the reversal of the decree in the collateral suit. 130 U. S. 50; 45 Fed. 741; 141 U. S. 240.

3. A further ground for bill of review, as shown by the proof, was the discovery, after the rendition of the decree, that the decree in Foulkes' Heirs *v.* Citizens' Bank of Louisiana, which was the foundation of appellee's title, was absolutely void. 75 Ark. 420. That appellee took advantage of a false record, and imposed it upon the court in such manner as to mislead the appellants, affords ground for bill of review, and is sufficient to vacate the decree under the statute. Kirby's Digest, § 4431; 54 Ark. 539.

*N. W. Norton, Caruthers Ewing* and *Lamb & Caraway,* for appellee.

1. Since, as shown by the record, the warning order in the Federal case was not published until the 29th day of July, that suit, notwithstanding the complaint was filed on the 1st of July, was not commenced until the first named date. The presumption is that the delay in publication was the fault of the appellants, and that the warning order remained in the office of the clerk. 100 Tenn. 64; 11 Ind. 48; 18 Johns. 14. And appellee, having purchased on July 20th, nine days before the publication, was not a purchaser *pendente lite.* 1 Am. & Eng. Enc. of L. 750; 108 Ind. 229; 36 Neb. 73; 10 Barb. (N. Y.), 258; 5 Cowen, 158; 18 Johns. 486; 36 Ind. 23; 11 Ind. 48; 43 Miss. 241; 20 Ind. 479; 1 Blackf. 379; 1 Ind. 276; 17 Johns. 63; 23 Mo. App. 376. See also 55 Ark. 633.

2. The assignments in the bill of review are not of a character to be reached by a bill of review, but by appeal only. They contain nothing of error apparent upon the face of the decree, but, at most, only show errors in the decree. For distinction between error apparent upon the face of a decree and error in the decree, see 11 Ark. 114; 24 Ark. 528; 32 Ark. 753; 61 Ala. 354; 50 Fed. 490; 53 Ala. 229; 50 Ala. 46; 18 Ark. 320; 45 Mich. 394; 29 Fed. 33; 1 Lea (Tenn.) 313; 82 Tenn. 596; 17 Ves. 177. For what constitutes error upon the face of a decree for which a bill of review will lie, see 70 Ala. 479; 84 Ala. 349; 1 Tenn. Ch. 452; 3 *Id.* 386; 42 Mich. 304; 44 Miss. 699; 57 Miss. 465; 3 How. (Miss.) 377; 52 Fla. 927; 75 Ill. 255; 13 Ga. 24; 5 Call (Va.) 459; 3 Bush (Ky.) 218; 1 Sandf. Ch. (N. Y.) 120; 16 Fla. 773; 3 Heisk. (Tenn.) 567.

3. Notwithstanding a copy of the deed record, instead of a copy of the court record in the case of Fowlkes' Heirs *v.* Citizens' Bank of Louisiana, was used upon the trial of the cause at Wynne, if any of the appellants, or their counsel, knew that that decree was entered in vacation, or if, by the exercise of reasonable diligence on their part, they could have known the facts, the bill of review is unavailing. 60 Ark. 55; 59 Ark. 441; 55 Ark. 22; 47 Ark. 17; 26 Ark. 600; 3 Dana (Ky.) 500; 107 Tenn. 300; 83 Va. 141; 79 Ala. 319; 30 N. J. Eq. 559; 11 B. Mon. (Ky.) 220; 6 Rich. Eq. (S. C.) 364; 51 Ala. 301; 77

Va. 600; 5 Mason (U. S.) 303; 32 W. Va. 335; 66 Wis. 85; 55 Ill. 458; 5 Sneed (Tenn.) 100; 64 Ark. 126; 39 Fed. 680; 21 So. 490. Because the court, upon consideration, gave to the muniments of title introduced in evidence an erroneous construction, is no ground for bill of review. 70 Ala. 479; 79 Ala. 319; 82 Ill. 116; 127 Pa. St. 420; 6 Heisk. (Tenn.) 79; 12 *Id.* 704; 6 Lea (Tenn.) 69; 76 Va. 609; 76 Va. 160; 75 Va. 76; 19 W. Va. 167; 37 *Id.* 201; 95 U. S. 434; 19 Fla. 455; 45 N. H. 81; 3 Ia. 574; 24 Tex. 526; 6 Vt. 177. The muniments of title referred to in the record are evidence only, and not a part of the pleadings. The court will not review the evidence. 59 Ark. 441; 106 U. S. 552; 22 Wall. 60; 95 U. S. 99; 13 Pet. 6; 39 Ala. 409; 45 N. H. 81; 3 Ia. 514; 75 Va. 418; 81 Va. 711; 83 Va. 81.

4. Since there was no service upon Haggart & McMasters in the Federal case until after the sale by them to appellee, and no entry of appearance by them until long after that time, the decree of that court was without effect upon the title of appellee. It was, nevertheless, proper to file the plea of *res judicata* in the State case, since it could not be foreseen what this court would hold with reference to the date of the commencement of the Federal case. Moreover, the appeal in the Federal case was without supersedeas, which left the decree in the trial court in full force; and, such being the case, it was properly pleaded in bar. Appellants will not be permitted to prosecute the same cause of action in numerous courts to final decision, and then adopt the decree that best subserves their purposes.

5. Appellants ought not to be heard to ask this court to relieve them from difficulties which they have brought upon themselves. Appellee cannot be held responsible for their mistakes, and the court should leave them where it finds them. 3 Munf. (Va), 112; 1 A. K. Marsh. (Ky.), 459; 13 W. Va. 236; 17 Ark. 45. And, under the conditions prevailing in this case, the reversal of the Federal decree affords no ground for bill of review. 53 S. E. 209; 10 Yerg. (Tenn.) 55; 52 S. E. 489.

*E. Foster Brown,* and *Murphy, Coleman & Lewis,* for appellants in reply.

1. The indorsement of the warning order upon the complaint constituted the process, and its subsequent publication was merely its service. 31 Ark. 93. Appellee's contention that the

earliest date on which the Federal case can be deemed to have commenced would be July 29th, the date of the first publication, is not borne out by the cases cited, except two, viz., 108 Ind. 229, and 36 Neb. 73, and in each of those cases special statutes *authorize* that construction. Rev. Stat. Ind. 1881, § § 314. The Nebraska statute is similar.

2. The bill of review in this case is based on all of the three recognized grounds for that procedure: first, error of law apparent on the face of the record; second, newly discovered evidence; third, matters arising subsequent to the decree sought to be reviewed. It is conceded, under the first head, that it is neither necessary nor proper for the appellate court to consider the evidence; but the court may consider the record, and in this State the record in a chancery case consists, not only of the pleadings, but also of all exhibits thereto. Story's Eq. Pl. 407; 52 Fed. 7; 60 Ark. 459; 26 Ark. 600.

3. Appellee is the sole beneficiary of the act whereby the lower court was imposed upon and appellant's counsel misled by the introduction of the certified copy of the deed record, and it lies not in its mouth to charge appellants with negligence in failing to examine the deed record and also the chancery record, when the copy introduced was offered by appellee's counsel. Is suspicion a necessary ingredient of diligence and confidence in counsel culpable negligence?

HILL, C. J. The widow and heirs at law of C. O. Boynton, deceased, in July, 1903, filed a petition for leave to file a bill of review, and tendered their bill of review. The chancellor entertained this bill, and granted a temporary injunction upon it.

After answer and development of the evidence, a final hearing was had, and the court dismissed the bill of review for want of equity, and the plaintiffs therein have appealed.

Questions of fact, professional ethics and equity jurisprudence have been presented in the briefs and at the bar. While many of these questions will not be noticed in the opinion, they have not escaped the attention of the court; but only such matters as are controlling will be set out and discussed.

There were three suits, representing practically the same property, and between the same parties or successors or privies of those parties; and for convenience they will be designated

"first suit," "second suit," and "present suit," the last named being the bill of review.

## THE FIRST SUIT.

On the first day of July, 1899, C. O. Boynton filed his complaint in chancery in the Mississippi Chancery Court against Jas. Haggart and Wm. McMasters and others claiming under them, in which he alleged title in himself to a large body of land in Mississippi County, the subject-matter of this controversy, and set forth a chain of title to the same. The only portion which is material to this suit is a deed from the Citizens' Bank of Louisiana to W. L. Culberson, of date September 26, 1883. He alleged that Haggart & McMasters claimed title to said land, and set forth their chain of title, which will be hereinafter noticed, and alleged that the other defendants, claiming under Haggart & McMasters, were trespassers upon the land, and were about to interfere with his possession; and he prayed that the deeds under which Haggart & McMaster claimed be canceled as clouds upon his title, and that his title be quieted against the defendants. The complaint was duly verified on the 1st day of July, and there was also an affidavit made on said date, and attached thereto, alleging that the defendants were nonresidents of the State of Arkansas, and asking that a warning order issue calling upon the defendants to appear in court in thirty days to answer the complaint. A bond for costs was also given, and on said date the clerk appointed an attorney for the non-resident defendants, and also indorsed upon the complaint a warning order against the defendants. These proceedings conformed to sections 6055-6 of Kirby's Digest.

The warning order was published in a weekly newspaper in Mississippi County for four weeks, the first publication being on the 8th day of July and the last on the 29th of July, 1899.

At the October term, 1899, of the chancery court, Haggart & McMasters removed the cause to the United States Circuit Court for the Eastern District of Arkansas. The defendants filed answer and cross-complaint in the Federal court. They claimed title in themselves, and asked that their title be quieted against Boynton, and set forth their chain of title. So far as

this litigation is concerned, the only material part of their chain of title is as follows:

"These defendants admit that the Citizens' Bank of Louisiana executed a paper on September 26, 1883, in favor of W. L. Culberson, but these defendants deny that thereby any title to the lands involved in this suit passed to the said Culberson for the reason that they were not set out therein, and for the further reason that said paper only attempts to convey such lands as the Citizens' Bank of Louisiana then owned, and said bank at that time had no right, title or claim to any of the lands involved in this suit, for the reason that prior thereto, to-wit, on the 3d day of May, 1880, a decree had been rendered by the chancery court of Mississippi County, Arkansas, divesting all title out of the said Citizens' Bank of Louisiana in and to said lands and vesting the same in the heirs of Jeptha Fowlkes."

This is the decree which this court considered in *Boynton* v. *Ashabranner,* 75 Ark. 415.

The suit proceeded to judgment in the United States Circuit Court in favor of Haggart & McMasters on the 11th day of June, 1901. Boynton appealed from this decree, and on the 16th of February, 1903, the United States Circuit Court of Appeals of the Eighth Circuit reversed that decree and directed that the cause be remanded with instructions to enter a decree quieting the title to the lands in controversy in Boynton. The case is reported in 120 Fed. 819 (*Boynton* v. *Haggart.*)

On the 10th of October, 1903, the United States Circuit Court for the Eastern District of Arkansas entered a decree quieting the title of the Boyntons in pursuance to the mandate of the Circuit Court of Appeals.

## THE SECOND SUIT.

On the 29th of January, 1901, the widow and heirs at law of C. O. Boynton filed a complaint in the chancery court of Mississippi County against the Chicago Mill & Lumber Company. The allegations of this complaint are practically the same as those in the first suit, with these differences: First, they allege the death of Boynton, and that they are the widow and heirs at law; and second, that the Chicago Mill & Lumber Company is claiming to own said lands.

The Chicago Mill & Lumber Company answered this complaint substantially as Haggart & McMasters had answered the suit of Boynton against them, and added a cross-complaint against the Boyntons in which it claimed title to the land under the same chain of title set forth by Haggart & McMasters, with the additional claim of a conveyance from Haggart & McMasters to it, which conveyance was executed on July 20, 1899. This cross-complaint was answered. Subsequently the defendant filed an amendment to its answer and cross-complaint, in which it set forth the litigation in the first suit, and alleged that it had gone to a final judgment in favor of Haggart & McMasters; that by virtue thereof the title of Haggart & McMasters had been quieted against Boynton and those claiming under him, and that said title had passed to it by virtue of the conveyance of Haggart & McMasters to it; and a copy of the decree was attached to the amendment.

The plaintiffs answered this amendment; they denied the force and effect of the *res judicata* therein set up, and put in issue the rendition of the decree in the United States Circuit Court. At the time this plea of *res judicata* was entered the appeal from the judgment of the circuit court was then pending in the United States Circuit Court of Appeals.

This cause proceeded to a hearing before the chancellor at chambers in Wynne, Cross County, with an understanding that the decision of the chancellor would be entered at the ensuing term of the Mississippi Chancery Court. There is conflicting evidence and considerable discussion as to an alleged agreement of counsel covering the completion of the record in such a way that it could be perfected for appeal. But, as the court views the questions, none of these matters are material.

One matter, however, developed there which has become material, and that is the evidence used to prove the decree in the case of Fowlkes's heirs *v.* Citizens' Bank of Louisiana, divesting the title from the Citizens' Bank of Louisiana and vesting it in said Fowlkes's heirs.

Mr. N. F. Lamb, the attorney representing the defendant at this hearing, testified as follows:

"The chancery record of the decree showed that it was entered in vacation. I had a certified copy of the deed record

made, rather than a certified copy of the decree as it appeared in the chancery record, and took the same for use in evidence in the hearing of this case at Wynne, knowing that the chancery record showed that the decree had been entered in vacation. I did not take a certified copy of the chancery record because I certainly did not intend to furnish evidence which would enable my adversaries to win the case. I do not ordinarily load guns for the other party to shoot me with. Following the decree rendered in vacation is an order made at the next term of the court changing the name of the defendant in the Fowlkes suit· from the Citizens' Bank of New Orleans to the Citizens' Bank of Louisiana. I had a certified copy of this order made and introduced it also on the hearing at Wynne."

The chancellor found against the plaintiffs in this action, and a decree to that effect was entered at the October term of the Mississippi Chancery Court. The decree does not state the grounds of decision. It shows that the case was submitted on the pleadings, which were enumerated, the documentary evidence and the stipulation of counsel; and it does not identify the documentary evidence, and the stipulation of counsel is not on file. It is concerning this documentary evidence and stipulation of counsel that much of the evidence and discussion is here directed, none of which it is essential to notice here. ·

No appeal was prosecuted from this decree.

## THE PRESENT SUIT.

As stated, this suit was filed in July, 1903, and asks a vacation of the decree in the second suit, and assigns many reasons therefor. Issue was taken on practically all of the allegations in the complaint, and a hearing was had in which all the matters above outlined were developed, and many more, resulting in a decree against the plaintiffs; and it is the refusal of the court to vacate that decree in the second suit that this court is called upon now to review.

1. In his work on Equity Pleadings, Mr. Justice Story said: "But if a case were to arise in which the new matter discovered could not be evidence of any matter in issue in the original cause, and yet clearly demonstrated error in the decree,

it should seem that it might be used as ground for a bill of review, if relief could not otherwise be obtained." Story on Equity Pleadings, § 415.

This principle has been applied by the Supreme Court of the United States in *Ballard* v. *Searls,* 130 U. S. 50, and *Butler* v. *Eaton,* 141 U. S. 240, to a judgment resting upon another judgment which has been vacated or reversed; holding such vacation or reversal to be new matter which could not be evidence in the original cause, and yet demonstrating error in the decree which should be corrected by bill of review if relief could not otherwise be obtained. While the authorities are not numerous nor very satisfactory, yet this seems to be the rule upon the subject. *Vetterlein* v. *Barker,* 45 Fed. 741; *Ætna Ins. Co.* v. *Aldrich,* 38 Wis. 107; *Hennessy* v. *Tacoma, S. & R. Co.,* 129 Fed. 40; 1 Black on Judgments, 333; 1 Beach on Modern Equity Practice, 882.

The above rule obtains where the decree is based in whole or in part upon a plea of *res judicata. Hennessy* v. *Tacoma S. & R. Co.,* 129 Fed. 40; *Vetterlein* v. *Barker,* 45 Fed. 741.

The new matter must be such as would have changed the result, had it been brought forward. 3 Encyc. of Plead. & Prac., 850-2. In other words, if the decision was properly reached upon other grounds than the plea of *res judicata,* a bill of review would not lie merely because the effect of the *res judicata* has subsequently been changed.

The decree here shows that the case was tried upon issues presented in the pleadings, especially mentioning the amendment raising the issue of *res judicata,* and upon the documentary evidence introduced to sustain the various pleadings; and, as a copy of the decree was attached to the amendment, necessarily this was before the court. Hence it is seen that it was one of the issues upon which the case might have been decided, and that the reversal of the decree would be new matter demonstrating error, and the relief should be granted if the other essentials to such relief are present.

2. The first inquiry into the other essential prerequisites to sustaining this extraordinary relief is whether the plaintiffs had any other remedy. Was it proper for the chancery court to have sustained the plea of *res judicata?* If it was error to

have sustained it on account of the decree pleaded being a void decree, or not applicable, or otherwise not effective as a bar, then the remedy would not be by bill of review, but by appeal or other appropriate remedies.  1 Black on Judgments, § 304a; *Vetterlein* v. *Barker,* 45 Fed. 741.

If the decree was a bar to the second suit, then the plea of *res judicata* should have been sustained, notwithstanding an appeal was taken from the decree, and was then pending undecided in the appellate court.  Judge Thayer, speaking for the Federal Circuit Court of Appeals for this circuit in *Ransom* v. *City of Pierre,* 101 Fed. 665, said:

"In many cases the question has been mooted whether, when a writ of error has been sued out, or when an appeal has been taken which operates essentially as a writ of error to review a judgment at nisi prius, and a supersedeas bond has been given to stay proceedings, such a judgment may be received in evidence in another suit between the same parties in support of the plea of *res judicata;* and, while the decisions upon this question have not been uniform, yet, in our judgment, the weight of judicial opinion, as well as sound reason, is that, when a case which is removed to an appellate court by a writ of error or an appeal is not there tried *de novo,* but the record made below is simply re-examined, and the judgment either reversed or affirmed, such an appeal or writ of error does not vacate the judgment below, or prevent it from being pleaded and given in evidence as an estoppel upon issues which were tried and determined, unless some local statute provides that it shall not be so used pending the appeal.  A supersedeas bond merely operates to stay an execution or other final process on the judgment.  It does not vacate the judgment nor prevent either party thereto from invoking it as an estoppel."  Citing many authorities.

This is in accord with *Cloud* v. *Wiley,* 29 Ark. 80, and *Miller* v. *Nuckolls,* 76 Ark. 485.  While there is a conflict in authority, this view seems to be the most generally accepted one.  2 Black on Judgments, 510-11.

This decree being effective as a bar, notwithstanding the appeal, it must next be decided whether it should have been held a bar in the second suit.  The first suit was brought on the first day of July, the warning order was issued on the 8th day of

July, and the conveyance from Haggart & McMasters to the Lumber Company was made on the 20th of July; and the question has been raised as to whether a suit based upon constructive service is pending until the service is completed on the thirtieth day after the making of the order as provided in section 6058 of Kirby's Digest.

Section 6033 of Kirby's Digest provides: "A civil action is commenced by filing in the office of the clerk of the proper court a complaint and causing a summons to be issued thereon." There is no statutory provision defining the commencement of a suit where service is constructive and made pursuant to sections 6055-6 of Kirby's Digest. But by analogy it seems clear that a suit commenced by constructive service, as authorized by sections 6055-6, is commenced when the proceedings therein provided for are complied with. In fact, this is a method of summons fitted to a case where the defendant is a non-resident. Therefore the Chicago Mill & Lumber Company was a purchaser *pendente lite*.

A purchaser *pendente lite* is as fully bound by the decree as the parties thereto. *Brown* v. *Bocquin*, 57 Ark. 97; *Burleson* v. *McDermott*, 57 Ark. 229; 2 Black on Judgments, § 550. The issues as to which title should prevail were identical in the two cases.

Thus it is seen that every element to make the decree a bar to the second suit was present. Hence it was the duty of the chancery court to have decided the second suit in favor of the defendant on the plea of *res judicata;* and therefore it follows that an appeal would not have restored the plaintiff's rights, because the case was correctly decided against them on this issue at that time.

3. Were the plaintiffs guilty of such negligence or laches as should defeat the bill of review? This rule was deduced from the authorities in *Bartlett* v. *Gregory*, 60 Ark. 453: "Where a bill of review is for newly discovered matter, the rule now is that the matter must be such as could not have been discovered by the use of reasonable diligence, 'for, if there be any laches or negligence in this respect, that destroys the title to the relief.'" In application of this rule, the court recently decided that equity would not relieve against a judgment obtained on a foreign

judgment, notwithstanding the foreign judgment had been vacated in the jurisdiction where rendered, because the litigant had negligently failed to plead here the pending litigation in the other State seeking to vacate it, or to plead the same matters there pleaded which went to the jurisdiction of the court rendering the judgment, and were as available here as there, but let a default be taken. *Parker* v. *Bowman,* 83 Ark. 508.

It is strongly urged upon the court that there was negligence in this case, which should defeat the bill of review within these principles. The negligence imputed to plaintiffs and their counsel is in not perfecting their appeal in the second suit and not discovering that the decree in Fowlkes' Heirs *v.* Citizens' Bank was a decree rendered in vacation, and utterly without ·force. This appears not to have been known to them until, on the hearing of the present suit, an attorney not connected with the litigation informed them of it, and these facts were then brought into the pleadings and evidence. An appeal would not have availed the plaintiffs because the decree, as shown, was proper for the defendant on account of the plea of *res judicata.* Still, negligence would be fatal if they did not properly present all defenses, so that with a reversal in the Federal court they would have a record entitling them to judgment with the *res judicata* eliminated; for even after appeal a way may be found to let in such new matter. *Ballard* v. *Searls,* 130 U. S. 50; *Butler* v. *Eaton,* 141 U. S. 240.

Therefore, the diligence of plaintiffs and their counsel in ascertaining their defenses must be tested. Both parties derived their title from the Citizens' Bank of Louisiana—the Boyntons by virtue of a conveyance from its grantee, the lumber company, through mesne conveyances going back to a decree purporting to divest the title from the bank and invest it in Fowlkes' heirs, from whom it deraigns title, prior to the conveyance to Boynton's grantor. The lumber company in the second suit set up affirmatively that the title of the Citizens' Bank had passed from it prior to said decree in the Federal court, and made said decree one of its muniments of title. The burden rested upon it to prove this. The cause was heard, not in Mississippi County, where the records were accessible, but at Wynne, in Cross County; and the copy of the record introduced before the chan-

cellor was from the deed record. The decree was sc entered
in the deed record that it did not show that it was a decree en-
tered of record in vacation, but on the face of it showed a valid
decree of the Mississippi Chancery Court divesting the title from
the bank and investing it in the Fowlkes heirs. Heretofore is
set out the testimony of the Lumber Company's attorney as to
the production of a certified copy of the deed record in said
form, and his statement that he knew that the court record show-
ed that it was a vacation decree, and that he purposely had this
copy made from the deed record, instead of the court record,
because, as he expressed it, he didn't "intend to furnish evidence
which would enable his adversaries to win the case."

It is only justice to this attorney to say that he, and other
able lawyers, have insisted that this was not a void decree, but
that the subsequent court order changing the name of the de-
fendant therein adopted the vacation decree and made it thereby
a decree of court from that date. It is not a question of his
motives or conduct in presenting a certified copy of a decree
true in itself but from a record which did not show a fatal de-
fect in it, for they are immaterial to the issues under discus-
sion; but the question is whether his opposing counsel were
negligent in accepting this copy and not examining the court
record itself in order to ascertain the truth in regard to this
turning point in the titles. If they were negligent and derelict
in their duty in accepting this certified copy, then this bill must
fail, although it be otherwise well founded; for, if their negli-
gence rendered relief in the second suit impossible, a bill of
review does not lie to remedy it.

Litigants and counsel have a right to rely upon a certified
copy of a record introduced into evidence in court by a prac-
ticing lawyer as being the truth; and there is no negligence
that can be imputed to either a litigant or his counsel in not
verifying a certified copy of a public record. Records are con-
sidered the highest form of evidence, and authenticated copies
of them are made by statute as admissible as the records them-
selves. And when they are used no one should be required to
examine the originals, usually miles distant, to see if they are
authentic copies or forgeries, nor examine them to see if they
were made up, as in this case, true in fact but, by the sup-

pression of other facts, false in effect.   The court is of opinion that litigant and counsel were not negligent in accepting as true the copy presented in court.   Certainly, it lies not with the appellee to complain of an acceptance of what it offered as the truth.

4.   The question recurs whether the decree in the second suit is right without the effect of the *res judicata*.   As heretofore shown, it was right to decide the case for the defendant upon that issue.   But, if it was right to decide it for the defendant upon some other issue, then this action would not lie, as it would be unavailing to set aside a decree which should be re-entered upon another hearing with the *res judicata* eliminated.   Since the decision in the second suit, this court has passed upon the decree of the Fowlkes heirs against the Citizens' Bank in *Boynton* v. *Ashabranner,* 75 Ark. 415, and held that it was of no force.   Some of the questions there presented and considered are presented again by appellee's counsel, but the rule of *stare decisis* forbids a re-examination of the questions there decided.

Now, with the plea of *res judicata* eliminated, and the title settled by said decision, it necessarily follows that the decision in the second suit should be in favor of the Boynton title, since the only grounds upon which it should have been otherwise decided are now eliminated.   That being the case, all of the necessary elements to sustain a bill of review are found to be present, and it is sustained.

The judgment of the court dismissing the bill of review is reversed, the cause is remanded to the Mississippi Chancery Court with directions to vacate the decree in the second suit and enter judgment therein for the Boyntons, and to adjust such equities as may properly arise from payment of taxes, improvements, rents, etc.