BOYNTON *v.* BROWN.

Opinion delivered February 5, 1912.

1. ATTORNEY AND CLIENT—IMPLIED CONTRACT—COMPENSATION.—A client who knowingly and without objection accepts the services of an attorney employed by his attorney is liable for a reasonable compensation therefor. (Page 519.)

2. JUDGMENT—CONCLUSIVENESS.—A decree on a petition by a client for leave to file a bill of review, adjudging that petitioner's attorneys were not negligent in not discovering a certain fact is conclusive on the issue of the negligence of such attorneys in a subsequent suit by them to recover compensation for services rendered in the former suit. (Page 521.)

3. CONTINUANCE—GROUNDS.—The pendency of a suit in a Federal court is not ground for continuance of a suit pending in a State court. (Page 521.)

4. ATTORNEY AND CLIENT—NEGLIGENCE OF ATTORNEY.—Failure of an attorney to apply for a continuance of his case in a State court until a suit involving the same questions in a Federal court had been determined on appeal was not negligence, though the State court subsequently held that the judgment in the Federal court was conclusive against the client, as the attorney could not be expected to foreknow that the State court would hold that the judgment of the Federal court was conclusive. (Page 521.)

5. LIMITATION OF ACTIONS—ATTORNEY'S FEE.—The statute does not begin to run against an attorney claiming compensation for services in prosecuting a suit until the final determination of the suit. (Page 522.)

Appeal from Mississippi Chancery Court, Chickasawba, District; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

On July 1, 1889, C. O. Boynton filed a complaint in the Mississippi Chancery Court against Haggart and McMasters, asking that his title be quieted against them to a large body of lands in Mississippi County, Arkansas.

At the October term, 1899, of the chancery court the defendants removed the cause to the Federal court, and on the 11th of June, 1901, the Federal court rendered a decree in favor of the defendants. The plaintiffs appealed, and on the 16th of February, 1903, the decree was reversed, and the case remanded with directions to enter a decree quieting the title of plaintiffs.

Charles T. Coleman and W. J. Driver were the attorneys for the plaintiffs in this suit. C. O. Boynton died in 1900, and his widow and heirs employed W. J. Driver to institute another suit in the Mississippi Chancery Court against the Chicago Mill & Lumber Company, which purchased the lands involved in the Federal court case from Haggart and McMasters, and also some other land claimed by the Chicago Mill & Lumber Company and not involved in the case in the Federal court, and also for some lands claimed by Joseph Ashbranner, T. B. Ashbranner and S. W. Bunch. Driver employed the firm of Brown & Mathes, composed of E. Foster Brown and Ed H. Mathes to assist him. They prepared the complaints in these cases, and they were filed in the chancery court on January 26, 1901. The prayer of the complaint in each case was that the title of the plaintiffs be quieted against the defendants.

The defendants answered in each case, and set up title to the lands.

The Chicago Mill & Lumber Company in the suit against it subsequently filed an amendment to its answer and cross complaint, setting up that the suit in the Federal court had gone to final judgment in favor of the defendants Haggart and McMasters, and pleaded that decree as *res judicata*. The chancellor found against the plaintiff in this case, and a decree was entered for the defendant Chicago Mill & Lumber Company. No appeal was taken from this decree.

In July, 1903, the widow and heirs of C. O. Boynton were granted leave to file a bill of review, but on final hearing the

chancellor dismissed the bill of review for want of equity. Plaintiffs appealed to the Supreme Court. The decree of the chancellor was there reversed, and the cause remanded to the Mississippi Chancery Court with directions to vacate the decree and enter a decree in favor of the Boyntons. The case is reported in 84 Ark. 203, under the style of *Boynton* v. *Chicago Mill & Lumber Company*. The complaint in this case was filed in the chancery court of Mississippi County August 20, 1908, by appellees against appellants to recover attorneys' fees in that case and for a lien on the lands for the amount recovered.

Appellants deny that appellees were employed or rendered any services in said cause; they say, if they were employed, they were employed by W. J. Driver, without authority on his part to do so. They also allege negligence on the part of appellees in the management and conduct of the case, and plead the same in bar of their recovery in this suit; they also plead the statute of limitations.

W. J. Driver testified: "I have been practicing law since 1896, and represented C. O. Boynton as his attorney up to the time of his death. W. L. Culbertson owned an undivided one-half interest in the C. O. Boynton lands under a contract with Boynton. When I first accepted employment from Boynton, Culbertson had charge of the land. I represented both Boynton and Culbertson in litigation with numerous defendants, and I was engaged in all of these matters by Culbertson who had entire charge of the land in litigation. I paid taxes on all of the land after I became attorney for Boynton and drew drafts with receipts attached on W. L. Culbertson, Carroll, Iowa, until C. D. Boynton started in the lumber business at Boynton, and after this the drafts were drawn on the Boynton Lumber Company.

"Some time prior to the institution of the suits of the Boynton heirs against the Chicago Mill & Lumber Company, the Ashbranners, Bunch and J. Y. Turner sought to buy some of the Boynton lands. Brown and Mathes investigated the title to the lands, and claimed to have found some defects in it— the Chicago Mill & Lumber Company was claiming some of it. Mr. Culbertson authorized me to bring these suits to remove the clouds on the title of the Boynton heirs. Before the suits

were brought, Mr. Culbertson came both to Jonesboro, where Brown and Mathes lived, and to Osceola, where I lived. He discussed the matter with Brown and Mathes and with me, both as to the title and as to the advisability of having Brown and Mathes employed in the case. It was decided to employ Brown and Mathes because of the fact that they had gone into the title thoroughly, and were familiar with it. They prepared and filed the pleadings, and had charge of the litigation until the cases were decided in the chancery court. We lost the cases against S. W. Bunch and Joseph Ashbranner, because the defendants had been in possession of the land for the statutory period, but in the case against T. B. Ashbranner the Boyntons recovered. After the case against the Chicago Mill & Lumber Company had been decided adversely to the Boyntons in the chancery court, C. T. Coleman was called into the case, and thereafter had principal charge of the case, but Brown and Mathes and myself continued in the case as attorneys, and Brown rendered assistance as counsel in the proceedings."

E. Foster Brown testified: "I was licensed to practice law in 1871, and have practiced in northeast Arkansas ever since. W. J. Driver asked me to prepare and file the complaints in the cases against the Chicago Mill & Lumber Company *et al.* I did so. I briefed the cases very thoroughly, took the depositions and presented the cases in the chancery court. After the case had been decided against the Boynton heirs, I wrote to C. T. Coleman, of Little Rock, stating the facts and circumstances and citing authorities, and suggested to him the advisability of filing a bill of review. Mr. Coleman then took charge of the case, and thereafter had the principal charge of it, but I continued in the case and rendered him assistance in the preparation and conduct of the trial of it."

C. T. Coleman testified: "I received a letter from Judge E. F. Brown, in which Brown suggested the filing of a bill of review. Afterwards W. L. Culbertson came to my office, and I explained the case to him, and mentioned to him the letter I had received from Mr. Brown. I had always dealt with Culbertson as agent of the Boyntons in the case in the Federal court. Culbertson then told me that he wanted me to take charge of the case, and I prepared the bill of review. There-

after I had the principal charge of the case, but Mr. Brown assisted me in the conduct of it."

C. D. Boynton testified: "C. O. Boynton, my father, died in April, 1900, and thereafter I had charge of his lands in Arkansas. I authorized the bringing of the suit of the Boynton heirs against the Chicago Mill & Lumber Company, and employed W. J. Driver to bring it. I instructed him to let the suit rock along until the case in the Federal court had been disposed of."

We quote from his testimony as follows:

"Q. After this suit had been brought, state when you had any knowledge that plaintiffs were attorneys for the Boynton heirs. A. Some time after the suit was brought. I was going to my mill from Jonesboro to Loachville, and a party came in and introduced himself to me as E. Foster Brown, and said that he had charge of our suit against the Chicago Mill & Lumber Company; that Mr. Driver had turned it over to him. Q. Did you discuss it with him? A. No, sir. I let him do the talking. I did not know him; he was a stranger to me. Q. After you received this information, what did did you do? A. I wrote to Mr. W. L. Culbertson, Carroll Iowa, to know if he knew anything about it, and at the first opportunity I went to Osceola to see Mr. Driver. I also made some inquiries concerning Mr. Brown. Q. What information did you get from Mr. Driver when you called upon him? A. Mr. Driver told me that he was very busy as he was taking up some railroad work with the J., L. C. & E. and relieving Mr. Brown with some of his duties, and that Mr. Brown was relieving him in some of his cases where he had to make appearances, etc., but he gave me to understand that Mr. Brown did not perform any of the heavy duties at all. It was merely an exchange of work. I objected to the employment of Mr. Brown, and told Mr. Driver that I wanted him alone to have charge of these matters, as I knew nothing of Brown. He assured me that he would give it his personal attention in court. * * * After my father's death, people still persisted in writing to Mr. Culbertson. I took active charge of all of these matters, and Mr. Culbertson became my agent."

Additional facts will be stated in the opinion. The chancellor found in favor of the appellees in the sum of $1,500, and

decreed the same to be a lien on the lands of the appellants. To reverse the decree entered, this appeal is prosecuted.

*Block & Kirsch* and *F. H. Sullivan,* for appellants.

1. Appellees were never employed by appellants, nor by their authority, nor was their employment by another ever ratified. 10 Ark. 26; 28 *Id.* 98; 153 Ill. 561; 20 Col. App. 209; 132 Ill. 545; 30 Cyc. 1183; Mech. on Ag. (ed. 1889) § 276; 132 Ill. 545; 81 Mo. 144; 153 Ill. 565; 2 Met. (Ky.) 240; 23 Mo. App. 432; 125 Cal. 208.

2. With the termination of the employment, the right of action to recover for legal services is complete, and the statute begins to run. 27 Ark. 345; 14 *Id.* 192; 91 *Id.* 68. Final judgment terminates the employment. 27 Ark. 345; 64 N. J. L. 275; 32 Miss. 89; 152 N. C. 501; 85 S. C. 342; 109 Pac. 760; 100 Pac. 418; Weeks on Attorneys, § 248; 4 Cyc. 952; 3 Am. & Eng. Enc Law. (2 ed.) 330. The statute runs from the final determination of each case, and not merely from the final determination of the last of several cases disposed of. 91 Ark. 162; 14 *Id.* 192; 25 Cyc. 1081.

3. The services were not skilfully rendered nor of value. 2 Ark. 412, 570; 3 *Id.* 75; 11 *Id.* 227; 3 A. & E. Enc. Law (2 ed.) 384; 100 U. S. 195; 4 Cyc. 964; Weeks on Attorneys, § § 293-7.

4. A decree in vacation is void, even if entered by consent. 4 Enc. Pl. & Pr. 345; Freeman on Judg., § 121; Black on Judg., § 179.

5. A judgment is *res judicata,* notwithstanding an appeal. 29 Ark. 80; 76 *Id.* 485; 1 Freeman on Judgments, 328; 2 Black on Judgments, 510; 101 Fed. 665.

*Allen Hughes* and *W. J. Lamb,* for appellees.

1. The evidence fully sustains appellees' employment, and that they fully performed the services. There is no showing of carefulness nor unskilfulness. 84 Ark. 203; 120 Fed. 819 to 830.

2. As to *res judicata,* see 120 Fed. 819; 84 Ark. 1; 29 Ark. 80.

3. Appellees were duly employed. 108 Mo. 378.

4. As to duties and liabilities of an attorney to his clients, see 4 Cyc. 956; 11 Ark. 212; 52 Am. Dec. 262; 12 Cl. & Fin. 91.

Every one is presumed to have discharged his duties until the contrary appears. 12 Wheat. 69; 4 Ohio. 354; 3 Gill & J. 103; 20 Am. Dec. 463; 8 Conn. 134; 2 Car. & P. 557.

5. The question of limitation was settled in 1867. 22 Ark. 170.

HART, J., (after stating the facts). On the question of the employment of the appellees, we think the case is controlled by the principles announced in the case of *Fenno* v. *English*, 22 Ark. 170. Fenno had employed English to defend a suit for him. English was elected Chief Justice, and, upon assuming the duties of his office, made an arrangement with S. W. Williams to attend to his unfinished business for him. Pursuant to this agreement, Williams attended to Fenno's case until it was decided. English brought suit against Fenno for his fee, and recovered judgment in the circuit court; on appeal to the Supreme Court the judgment was affirmed. The court said:

"Under the decision above referred to, we hold that Fenno could not avail himself of the services of the substitute until he succeeded in the cause, and then allege that his contract was for the services of English only; and, further, if Fenno was dissatisfied with the services under the advice and direction of English, he should have paid for the services already rendered, and have made known his dissatisfaction."

It is true that C. D. Boynton testified that, soon after he learned that Brown had been employed as an attorney in the case, he told Driver that he knew nothing about Brown, and wanted him, Driver, to have the active personal charge of the case, but his testimony is contradicted by Driver and the other facts and circumstances in the case. Boynton himself admits that Culbertson had been interested in the lands, and had had charge of them prior to C. O. Boynton's death; that Culbertson had had charge of all litigation concerning the land and had engaged attorneys to conduct the litigation.

He states that, after his father's death, by direction of the other heirs, he assumed control of the land, but he admits that Culbertson continued to be his agent. Driver testified in positive terms that Brown was employed in the case by himself after consultation with Culbertson; that it was deemed best to employ Brown because of his familiarity with the title

to the lands which he had acquired by prior investigation. This is in direct conflict with the testimony of Boynton to the effect that Driver had told him that Brown was in the case only upon exchange of work.

The undisputed evidence shows that Brown prepared the pleadings in the case, took the depositions and conducted the case until it was decided adversely to the Boyntons in the chancery court.  Afterwards, when Mr. Coleman was employed to prepare and file the bill of review, Brown continued in the case and assisted him to some extent.  These facts were known to Boynton, and to Culbertson, his agent.  Boynton admits that Brown told him he had charge of the litigation, and he did not express any surprise or notify him that he expected Mr. Driver to take charge of the case.

The statement of Boynton that Driver told him that Brown was only in the case upon exchange of work with him was made after Driver had testified in the case.  It is true that Driver was not recalled as a witness, and thus did not in specific terms deny this testimony of Boynton, but the whole tenor of his testimony is contradictory of it, and is inconsistent with its truth.  While it is true that attorneys often assist each other, and make an exchange of work in trivial matters, it is not in accord with our common experience in such matters that they make exchange of cases of such magnitude and importance.  Boynton admits that Brown told him that he had charge of the litigation, not merely that he was assisting Driver. Boynton says that he did not say anything to Brown because he did not know him.  It was his duty then, or as soon thereafter as he made inquiries concerning Brown, to have notified him or have caused him to be notified that his services were no longer required.  He could not accept his services, knowing that Brown considered himself in charge of the case, and, after the services were rendered and the litigation ended, repudiate the employment, and refuse to pay Brown a reasonable compensation for his services.

The evidence shows that the amount allowed by the chancellor was a reasonable fee for the services rendered by Brown, provided he was not negligent in the conduct of the litigation.

In the original suit of the Boynton heirs against the Chicago Mill & Lumber Company, both parties deraigned title from

the Citizens' Bank of Louisiana—the Boyntons by virtue of a conveyance from the Citizens' Bank to Culbertson and from Culbertson to Boynton; and the Lumber Company through mesne conveyances from the Fowlkes heirs.   To support its claim of title, the Chicago Mill & Lumber Company introduced a decree in the case of Fowlkes' heirs against the Citizens' Bank, of Louisiana, in which the title to the land was divested out of the Citizens' Bank and invested in the Fowlkes heirs.   This decree purported to have been rendered prior to the conveyance by the bank to Culbertson, and was a basis for the chancellor's finding against the Boynton heirs and in favor of the Chicago Mill & Lumber Company.   After the decree was rendered, and before the bill of review was filed, it was discovered that the decree in the case of the Fowlkes heirs against the Citizens' Bank had been rendered in vacation, and was therefore void.

In the case of *Boynton v. Chicago Mill & Lumber Company*, 84 Ark. 203, the court held that there was no negligence in not finding this out sooner, and that it was sufficient to support a bill of review; in short, the court held that the Boynton heirs and their attorneys were not negligent in accepting as true the copy of the decree in the case of Fowlkes' heirs against the Citizens' Bank which was introduced in evidence by the Chicago Mill & Lumber Company.   This court having held in that case that counsel were not negligent in not discovering that the Fowlkes' decree was rendered in vacation, the finding is conclusive in the present case.

Again, it is contended by counsel for appellant that appellees were negligent in not asking the chancery court to continue the original case of the Boynton heirs against the Chicago Mill & Lumber Company until the suit in the Federal court had been disposed of.   This was not negligence on their part. In the first place, the pendency of the suit in the Federal court against Haggart and McMasters was not a legal ground for a continuance.   In the second place, appellees did not then know that the court would hold that the decree in the Federal court pending an appeal would be held to be *res judicata* in the case in the chancery court.   This was a matter for judicial determination.   It can not be said that counsel was negligent in not knowing in advance what the decision of the court would be.

The plea of the statute of limitations is not well taken. The testimony shows that appellees continued as attorneys for appellants until the case was finally determined in the Supreme Court on the bill of review. The opinion in that case was delivered October 28, 1907, and this suit was instituted August 20, 1908. As was held in the case of *Fenno* v. *English, supra,* the statute of limitations did not begin to run until the case was finally decided, and the service thereby terminated.

The decree will be affirmed.

KIRBY, J., dissents.