## EDWARD A. HOLYOKE *versus* THOMAS HASKINS *et ux.*

The domicil of a person *non compos mentis* under guardianship, may be changed by the direction or with the assent of the guardian, express or implied.

A person *non compos,* born in the county of Suffolk, removed, upon the death of her father, into the county of Middlesex, where she lived as part of her brother's family many years, and until her death, being for the last years of her life under a guardian who provided for her support, whose residence was in Suffolk. *Held,* that her domicil at the time of her death was in Middlesex; and that letters of administration on her estate granted by the judge of probate of Suffolk, were void for want of jurisdiction.

The *St.* 1817, *c.* 190, § 12, by which actions to recover real estate sold by administrators &c. on license, are limited to five years, applies only to sales made subsequently to the passing of the statute.

Such a sale made previously to the passing of the statute, may be avoided after the lapse of twenty years.

A grant of administration which was originally void, and not merely voidable, can acquire no validity from an acquiescence of twenty years or any longer period.

THIS was a *writ of right,* wherein the demandant claimed title to one undivided eighth part of certain land, as heir at law of Silence Eliot, who was alleged to have died seised of the same within forty years before the commencement of the suit.

At the trial, before *Parker* C. J., it was admitted, that John Eliot died seised of the demanded premises, leaving Silence, Sarah, and Joseph Eliot his children and heirs ; that in the division of his estate, the demanded premises were assigned to Silence and Sarah ; and that Silence was seised thereof within forty years.

Silence and Sarah were born deaf and dumb, in Boston, in the county of Suffolk, and lived there, making part of their father's family, until 1775, when he died. In that year their step-mother and brother, with his family, removed to Natick, in the county of Middlesex. He took Silence and Sarah with him as part of his family, in which they remained during his life ; and afterwards, until their death, they continued there with his widow and their step-mother. Sarah died in 1787, aged sixty-two years, and Silence, in 1790, aged sixty years.

In 1782 letters of guardianship were granted by the judge

of probate of Suffolk to John Haskins, over the persons and estates of Silence and Sarah, as persons *non compos mentis*. The guardian took possession of their estates and supported them, they remaining at Natick.

Holyoke
*v.*
Haskins.

After the death of Silence, the guardian settled his accounts in the probate office, and a balance was stated to be due to him, and was allowed by the judge of probate, of 171*l*. 19*s*. 1*d*. from Sarah's estate, and of 125*l*. 3*s*. 4*d*. from that of Silence

In August 1790 letters of administration upon the estates of Silence and Sarah were granted by the judge of probate of Suffolk to John Haskins, and in January 1791 he obtained license from the Court of Common Pleas to sell the whole real estate of Silence and Sarah to pay their debts. A sale was made in March 1791, pursuant to the license, from which sale the title of the tenants was derived.

It was objected on the part of the demandant, that the letters of administration were void, because the deceased persons, at the time of their death, and for a long time before, resided in and were inhabitants of Natick, in the county of Middlesex.

On the part of the tenants it was insisted, that after twenty years from the granting of administration, when sales of estates had been made consequently thereon, the administration could not be impeached on the ground of want of jurisdiction in the judge by whom it was granted; — also, that the deceased persons being *non compos*, (and this fact was found by the jury,) retained their habitancy and legal domicil in Boston, where they were born, notwithstanding their actual residence in Natick; — and that the decree of the probate court was conclusive as to the domicil or legal dwellingplace of the deceased before their death.

22

The question reserved was upon the validity of the sale by the administrator ; and if it was not valid, the verdict, which was in favor of the tenants, was to be set aside and a new trial granted.; otherwise judgment was to be entered on the verdict.

*Prescott* and *Porter*, for the demandant, contended that the letters of administration were void, because they were

*March* 29*th*
1826.

granted by the judge of probate for the county of Suffolk,
the intestates being at the time of their death inhabitants of
and residents in Natick, in the county of Middlesex, and
having actually died there.    St. 1783, c. 46, § 1 ;  Cutts &
al. v. Haskins, 9 Mass. R. 543 ;  Griffith v. Frazier, 8
Cranch, 28 ;  Toller, (3d ed.) 52, 120, et seq. ;  7 Bac. Abr.
65, Void &c., B ;  Welch v. Nash, 8 East, 394 ;  Smith v.
Rice, 11 Mass. R. 512 ;  Com. Dig. Administrator, B 5 ,
Hilliard v. Cox, 1 Salk. 37 ;  11 Vin. Abr. 73, Executors,
F.   The words " being inhabitants of " and " resident in,'
as used in St. 1783, c. 46, are synonymous.   Const. pt. 2
§ 2, art. 2, and § 3, art. 3, 4 ;  St. 1786, c. 3, § 1, 2, 3
Williams v. Whiting, 11 Mass. R. 432, 434.    Cases o
settlement have no bearing on the present question.   Putnam
v. Johnson, 10 Mass. R. 501, 502 ;  Granby v. Amherst, 7
Mass. R. 1.

They likewise contended, that the removal of the intes
tates with their step-mother and brother to Natick gave them
a domicil there ; and on this subject they referred to Code
Napol. liv. 1, tit. 3, art. 108 ; ibid. (Motives,) tom. 2, p. 146,
151, 156, 159 ; Encyc. Jurispr. tit. Domicile and tit. Tutèle
(p. 94, 95) ; Domat's Pub. Law, bk. 1, tit. 16, § 3 ; Po-
tinger v. Wightman, 3 Meriv. 67 ; 2 Bott's Poor Laws, 24,
26, 29.

Gorham and Hubbard, for the tenants.    After twenty years
from the granting of letters of administration, no fact shall
be alleged that shall defeat them.    The statute authorizes
a grant of administration in the county where the deceased
resided or was an inhabitant.    The judge of probate then,
when he undertakes to act in such a case, must proceed upor
some evidence giving him jurisdiction ; and when it appears
upon the face of the letters, that he had jurisdiction of the
subject matter and of the person, that evidence, however
slight it may have been, shall not be contradicted after the
lapse of twenty years, since no original administration can be
granted after that period.    A writ of error will not lie after
twenty years, and as a party is allowed, when a probate
decree is produced, to allege and prove it to be a nullity,
because error does not lie to a probate court, by analogy such

a decree should not be impeached after that period has elapsed. *Smith* v. *Rice*, 11 Mass. R. 513. Public convenience and the prevention of frauds require the adoption of this rule. The plaintiff must be considered as a party to the proceedings above stated, the estate having descended to him. He must have had notice, and he is bound, as if he had been a party to the record.

The legal domicil of Sarah and Silence Eliot was in Boston. Letters of administration granted in Middlesex might have been valid, as the statute speaks of *being resident* as well as of *being an inhabitant;* but the judge of probate proceeded upon the ground that the deceased were inhabitants of Suffolk. By *Prov. St.* of 1767, (Anc. Chart. &c. 663,) they could gain no inhabitancy in Natick without the approbation of the town. Their domicil of birth and origin was in Boston, and it could not be changed without an act of the will, domicil depending upon residence in a place and intention to remain there. The Code Napoleon gave power to a curator to change the domicil of his pupil, but in such case there was an act of the will of the curator. The intention of the step-mother and brother of these women could have no effect upon their domicil, and being *non compos*, they could have no will of their own. The guardian was an inhabitant of Boston, and the legal inference is that the wards were likewise. Dict. Portat. de Jurispr. et de Pratique, par M. D. P. D. C. *tit. Domicile* and *tit. Mineur;* 2 Domat, 464, Pub. Law, *bk.* 1, *tit.* 16, § 10 ; Vattel, *liv.* 1, § 218 ; *Somerville* v. *Somerville*, 5 Ves. 786 ; *Upton* v. *Northbridge*, 15 Mass. R. 237. To show the legal meaning of *inhabitant*, as distinguished from *resident*, they cited Anc. Chart. &c. 173, 251, 663 ; *St.* 1783, *c.* 46, § 1 ; *St.* 1789, *c.* 14.

This case differs from *Cutts & al.* v. *Haskins*, inasmuch as that action was brought within twenty years from the granting of the letters of administration, and there the deceased were not found by the jury to have been *non compos*.

The Court of Common Pleas, by whom the license was granted, had jurisdiction of the subject matter, the land lying in this county, and gave due notice, it must be presumed, to all parties concerned ; *Gray* v. *Gardner*, 3 Mass. R. 399 ;

*Colman* v. *Anderson*, 10 Mass R. 105 ; *Pejepscut Proprie-tors* v. *Ransom*, 14 Mass. R. 147 ; and the reasoning of this Court in *Perkins* v. *Fairfield*, 11 Mass. R. 228, is a full authority for protecting the tenants.

By *St.* 1817, *c.* 190, § 12, no action by an heir, to recover real estate sold under a license to an administrator, shall be sustained, unless it is brought within five years after the delivery of the deed, except in the case of minors, &c. The statute was intended to cover all sorts of defects in the license, where there is no fraud, and it applies to sales made before, equally with those made after it was enacted. All statutes of limitation are in some degree retrospective, but this exception has been taken and been overruled. More than five years elapsed between the passing of the statute of 1817 and the commencement of this action.

WILDE J. delivered the opinion of the Court. The principal points made in this case were settled, and we think rightly settled, in the case of *Cutts & al.* v. *Haskins*, 9 Mass. R. 543. On the same facts now disclosed, it was decided that the domicil of Silence and Sarah Eliot, at the time of their decease, was in the town of Natick in the county of Middlesex ; that the power of granting administration of their estates appertained exclusively to the judge of probate of that county ;[1] and consequently, that the grant of administration by the judge of probate for the county of Suffolk, and the subsequent proceedings thereon, were merely void.

That the proceedings and judgment of a court not having jurisdiction of the subject matter depending, are *coram non judice* and void, is a position too well established to be controverted. All acts done by ministers of justice without authority are a nullity. *Case of the Marshalsea*, 10 Rep. 76. If administration be granted upon the supposition that no will exists, and a will afterwards appear, all the proceedings under the administration are void. Toller, 120. And if the bishop grants administration and there are *bona notabilia* in divers dioceses, such administration is absolutely void. 5 Rep. 30, *Prince's case.* It is true that if the metropolitan

---

[1] See Revised Stat. *c.* 64, § 3.

grant administration within his province, although it does not belong to him, it has been held to be voidable only, because he has jurisdiction over his province ; but if he grant admini tration of goods in another province, it is void.   5 Rep. 31 *Moore*, 145, 693.    So the grant of an original administration more than twenty years after the death of the intestate, is *ipso facto* a nullity.    *Wales* v. *Willard*, 2 Mass. R. 120. If then, in the present case, the judge of probate for the county of Suffolk had no jurisdiction, it seems clear that the grant of administration, and the subsequent sale of the de manded premises under it, are void.    And it is equally clear, that he had not jurisdiction, if the domicil of the intestates, at the time of their decease, was in fact within the county of Middlesex.[1]

The question of domicil is one of more difficulty, and has been argued on new ground, not noticed in the case of *Cutts et al.* v. *Haskins*.  It has been strongly urged, that according to the facts reported, the legal domicil of the two Eliots still con tinued in Boston, the place of their births, notwithstanding their removal to Natick, and their long residence there ; because, by reason of their mental disability, they had not, it is said, the power to acquire a new domicil.   By the civil law, minors retain the domicil of their parents at the time of their decease, although they afterwards remove with the con sent of their tutors, curators, or relations ; because they are not permitted to change the order of their succession to per sonal property, which depends on the law of domicil.   3 Encyc. Jurispr. 804, *tit.* *Domicile ;* 2 Domat, 487, Pub. Law, *bk.* 1, *tit.* 16, § 3, *art.* 10.   It is not however clear that the same disability, by the civil law, attaches to a person *non compos.*   But admitting that it does, it is a principle not bind ing here ; for the reason on which it is founded fails, and it does not appear to have been adopted as a principle of the common law.   Here the right of inheritance is not changed

---

It is enacted by the Revised Statutes, that the jurisdiction assumed in any case by the judge of probate, so far as it depends on the place of resi dence of any person, shall not be contested in any suit or proceeding what ever, except in an appeal from the probate court in the original case, or when the want of jurisdiction appears on the same record    *c.* 83, § 12.

by any change of domicil within the State, nor is the settle-ment of estates affected thereby. We cannot therefore sup-pose that the legislature had any reference to the principles of the civil law, for the purpose of limiting or defining the jurisdiction of the judges of probate. We consider the statute as referring to the actual domicil of the deceased, and not to the right of domicil; and it is very clear that the actual domicil of the deceased was in Natick. There they dwelt and had their home, and there alone were they liable to be taxed for their personal property.

If it were admitted that idiots, and persons wholly bereft of understanding, are incapable of changing their domicil, it would not follow that the same incapacity would attach to all degrees of mental imbecility. There are those, and not a few, who may be unable to manage their property and other concerns with good judgment and discretion, and may need guardians to protect them from imposition, and who neverthe-less have sufficient understanding to choose their homes. It is not necessary, however, in this case, to rely upon any such distinction, because, I apprehend, it is clear that by our laws a guardian has the same power over his ward, that a parent has over his child. He has the custody of his person, and may appoint the place of his residence. The domicil therefore of an idiot may be changed by the direction, or with the assent, of his guardian, whether express or implied.[1]

It has been also objected, that the demandant's action is barred by the 12th section of *St.* 1817, *c.* 190,[2] but this section applies only to sales made subsequently to the passage of the act. It could not be construed to extend to sales made more than six years previous, without a violation of vested rights.

Another objection is, that the demandant's action is barred by lapse of time, more than twenty years having elapsed since the grant of administration; so that no new administration can now be granted. But no authority has been cited in support

[1] See Story on Confl. of Laws, 417, 44, n. 5; *Guier* v. *O'Daniel,* 1 Binney, 349, note; *Potinger* v. *Wightman,* 3 Merivale, 67; 2 Kent's Comm (3d ed.) 227, n. *a; Upton* v. *Northbridge,* 15 Mass. R. 239

[2] See Revised Stat. *c.* 71, § 37.

of this objection, and it is opposed to the case of *Griffith* v. *Frazier*, 8 Cranch, 9, in which letters of administration, being *durante absentia* of the executor, and a sale by the administrator, were declared void, more than twenty years having elapsed after the grant of administration and the subsequent sale. The grant of administration being void, the case stands on the same footing as though no administration had been granted, and the pretended administrator had acted without the semblance of authority.

Again it is said, as a writ of error will not lie to reverse a judgment after twenty years, so the decree of a judge of probate, after the same lapse of time, should be held valid. But there is a distinction between void and voidable acts ; and besides, writs of error are limited by statute, (10 & 11 *Will.* 3, c. 14,) so that the supposed analogy fails.

It was contended lastly, that twenty years' possession is a good foundation for the presumption of a grant. But a grant will not be presumed nor prescription allowed, except as to incorporeal hereditaments.[1] In a writ of right nothing short of forty years' possession will avail. To decide otherwise would be to repeal the statute of limitations. The tenants' title is merely a title by possession, and cannot be aided by any legal presumption, for the question of domicil being determined, the jury having established the fact that the last domicil of the deceased was within the county of Middlesex, the judge of probate in Suffolk had no jurisdiction ; and nothing can be presumed in favor of his proceedings ; nor can lapse of time render an act valid, which was originally void. *Quod ab initio non valet, tractu temporis non convalescit.*

Upon the whole, therefore, there seems to be no legal ground on which the tenants' title can be supported, and nothing appears, in any view of the case, to bar the demandant's action.

*Verdict set aside and a new trial granted.*

---

[1] See *Clark* v. *Faunce*, 4 Pick. (2d ed.) 246, n. 1 ; Matthews on Presump. 283, n. 1.