## SOUTER *v.* BAYMORE.

An unnecessary deviation, and injury ensuing to the cargo, is no defence to an action for freight, except so far as the loss was occasioned by the deviation.

And so where the master of a vessel who has contracted to carry no other cargo, and, in violation of his contract, takes additional cargo, an injury ensuing is no defence, except so far as the damage resulted from the breach of his contract.

A decree, in the admiralty appealed from, cannot be pleaded as a former recovery.

IN error from the District Court of Philadelphia.

*March* 16. Assumpsit for freight on wheat. Pleas.—Deviation, whereby the voyage was broken up: Deviation and overloading, whereby the wheat was injured: An agreement not to receive other freight on board, and that other freight was received whereby a leak occurred, and the wheat was injured. On the trial there was evidence that the plaintiff had agreed to carry certain wheat from the Rappahannock direct to Philadelphia; and that, without necessity, he had put into the Piankatank river, and

taken on board a deck load of wood.  On the voyage to Philadelphia, the vessel sprung a leak, in consequence of stress of weather, and the wheat of defendant was injured.

The plaintiff's points, on which the errors were assigned, were, that, if the master unnecessarily deviated, the owners were answerable for any subsequent loss to the cargo during the voyage.  2. If there was a contract for the exclusive use of the vessel, an unnecessary deviation, and taking in additional freight, cast upon plaintiff the responsibilities of insurer of defendant's goods.  His honour instructed the jury the rule was not so broad but the master and owner were liable for any damage actually resulting from the deviation or breach of the contract.

On the trial, the defendant pleaded a former recovery in the admiralty, to which there was a demurrer.  The record of the District Court of the United States given in evidence, and referred to in the plea, showed that, in a libel for the damage, a decree was made since this action was brought, and that there was an allowance for the freight there made.  There also appeared on the record an appeal entered from this decree to the circuit court.  It was admitted this was the decree referred to in the plea, and the cause was argued as if the plea set out the record given in evidence, and it appears so to have been treated by this court; for, otherwise, the fact of the appeal taken did not appear in the plea demurred to.

*Guillou* and *Dunlap*, for plaintiff in error.—The decision of the admiralty was on the same point now in controversy, and an allowance was made for the very subject of the present demand; it was, therefore, a mere question for a jury to determine whether the parties or privies to that action are parties or privies to this: Pet. C. C. R. 202 ; Marsh *v.* Pier, 4 Rawle, 285 ; Carvill *v.* Garrigues, 5 Barr, 152 ; 2 Saund. Pl. and Ev. 611 ; Hibshman *v.* Dulleban, 4 Watts, 183 ; Kilheffer *v.* Herr, 17 Serg. & Rawle, 322.

The deviation, it is admitted, would discharge an insurer ; and the same consequences must result where the shipper stands his own insurer ; the reason is the same ; the risks are varied : Hughes on Ins. 180 ; Coles *v.* Marine Ins., 3 Wash. C. C. Rep. 159 ; Martin *v.* Delaware, 2 Wash. C. C. Rep. 254.  More particularly is this so, where there was a contract for a direct voyage.

*G. M. Wharton*, contrà.—The plea is defective in form and substance.  In form, as not pleaded *puis darrein continuance,*

which it should have been, as the decree was subsequent to the bringing of this action; in substance, because the record shows the matter is yet at large by the appeal, according to the settled practice of the admiralty.

The ruling of the judge, as to the effect of the deviation, was clearly in accordance with the cases. In Davis *v.* Garrett, 6 Bing. 716, the jury found specially there had been an unnecessary deviation, which caused the loss. So in Hart *v.* Allen, 2 Watts, 114, it was held to be necessary to prove the loss to have been occasioned by the unskilfulness of the crew, or want of seaworthiness: 3 Kent's Com. 209, 210 ; Davidson *v.* Gwynne, 12 East, 381 ; Palmer, 397.

*Reply.*—The appeal does not make the former decision less a binding one, until reversed, for the purposes of pleading. This is shown from the cases of awards: Reed *v.* Garvins, 7 Serg. & Rawle, 354.

*March* 27. BELL, J.—The plaintiff in error suggested two points for consideration. The first of these is, whether a conclusive effect is to be ascribed to the decree pronounced in the admiralty, by which an allowance of the charge for freight claimed in this action was accorded to the defendant in error by way of set-off? Though the affirmative of the proposition was argued with very considerable emphasis by the plaintiff here, no hesitancy is felt in resolving it negatively.

It is conceded, as an unquestionable rule, founded on public policy, that the judgment of a court of competent jurisdiction on the same subject-matter is, as a plea, a bar, and as evidence, where it is receivable without being specially pleaded, conclusive between the same parties or their privies, and this without regard to the variant forms of action or modes of proceedings which may happen to be adopted as a means of litigating the points in issue : Cist *v.* Zeigler, 16 Serg. & Rawle, 285; Darlington *v.* Gray, 5 Whart. 493. Nor is it material that the plea is pleaded or the evidence given in an action instituted before the proceedings in which the former judgment or decree was pronounced; for it is still within the maxim *nemo debet bis vexari pro una et eadem causa:* March *v.* Pier, 4 Rawle, 284. But a judgment must be, in its nature, final before it can be permitted to operate as an estoppel. He who adduces it as a means of conclusive defence must be able to show, that, until reversed, it binds the respective rights of

the parties to it, or his antagonist may go behind it. But it is conceded, though imperfectly shown by the records given in evidence, that the decree, upon which the plaintiff in error founds in part his defence, has been regularly appealed from, and this appeal is now pending and undetermined in the Circuit Court of the United States. Now, it is settled, that, in admiralty and maritime causes, an appeal suspends the sentence altogether, and it is not *res adjudicata* until the final sentence of the appellate court is pronounced. The cause is there heard *de novo*, as if no sentence had ever been passed: Dunlap's Adm. Pr. 316, 317. The information filed in the inferior may be amended in the superior tribunal; for, on the appeal, it is admissible to allege what has not before been alleged, and to prove what has not before been proved: 2 Brown's Civ. and Adm. Law, 436, 437; The Venus, 1 Wheat. 113; The San Pedro, 2 Wheat. 140; Hawthorne *v.* United States, 7 Cranch, 157. So far is the principle carried, that, in Yeaton *v.* United States, 5 Cranch, 281, where a ship had been condemned for the violation of an existing statute by both the District and Circuit Courts; but, after appeal to the Supreme Court of the United States, the statute expired by its own limitation; it was held the penalty of the act could not be enforced. In delivering the opinion of the court, Chief Justice Marshall said the cause was to be considered as if no sentence had been pronounced, and it had long been settled on general principles that, where no sentence has been awarded, a penalty could not be inflicted for the breach of a statute expired or repealed, unless under a special provision. It would be difficult to adduce a stronger illustration than is furnished by this case of the rule, that a decree in admiralty appealed from is treated as non-existent, pending the appeal; and in accordance with it is the act of Congress of 1803, c. 93, which gives the appeal and authorizes the introduction of new evidence on the hearing. The decree of the inferior court is conclusive only on a party who does not appeal from the judgment: Stratton *v.* Jarvis, 8 Peters, 4; and, in this particular, it is altogether unlike the case of an award made under our arbitration laws appealed from, but which may yet, according to Reed *v.* Garvins, 7 Serg. & Rawle, 354, be pleaded as a former recovery. But this is a consequence of the statutory provision, which gives it the effect of a judgment until reversed or modified on appeal, and it is, therefore, to be considered as final until so reversed. It has been said to be a new species of judgment. If no appeal be entered within twenty days, it becomes absolutely final; and an appeal but entitles the appellant to a trial

by jury of the same subject-matter litigated before the arbitrators, but still leaving their award untouched by the appeal: Reed v. Garvins; Gray v. Darlington, supra.

To attribute to a decree in admiralty the quality of an estoppel, might be productive of infinite injustice. In the case in hand, it would bar the plaintiff below of his demand, and yet the Circuit Court, taking a different view of the law on the facts, or of the facts, from the evidence given in the District Court, or upon new allegations and proofs, may altogether disallow the claim for damages prosecuted by the defendant's consignor, when, of course, the allowance made for freight will fall with it. Thus the plaintiff below might be doubly defeated, and this, too, without inquiry into the merits of his claim. But we are not forced to hazard this mischief by the operation of any technical rule. As has been shown, the subject agitated in this suit had not passed in rem judicatam, properly speaking. The court below was, therefore, right in its instruction to the jury on this point. This view renders it unnecessary to consider whether the parties to the two suits can be regarded as the same, or as privies. The second question is, whether a deviation from the direct course of the voyage, under the agreement in proof, will make the master and owners of the vessel answerable for subsequent damage suffered by the cargo, though such injury was not occasioned by the deviation. The judge below was of opinion that the plaintiff was liable only for any loss actually resulting from the deviation. This opinion, we think, unquestionably correct. The contrary position is based upon a supposed analogy between the contract of a common marine carrier, where no insurance has been effected by the owner of the goods, and the contract of assurance which will be avoided by a deviation rendering the owner and master of the vessel liable to the insured. It is thought that, where there is no actual insurance, the owner of the freight is to be regarded in the double character of his own insurer and of owner, and, in the latter capacity, may claim to stand in the relation of an assured, whose policy has been determined by the misfeasance of the master. But the well-considered case of Hart v. Allen and Grant, 2 Watts, 114, established that no such analogy exists. As is said by the Chief Justice, speaking as the organ of this court, in the contract of assurance, it is the assured who enters into the warranty, which is consequently introduced for the protection of the insurer; but there is not the same reason to make it a fundamental and specific condition of the contract, where the owner of the goods is fully pro-

tected by the general liability of the carrier for the actual consequences of any delinquency. In another part of his opinion, he exhibits clearly the impolicy and impropriety of so narrowing the exception in favour of the carrier as to make him answerable for the acts of Providence, as a punishment of an independent delinquency—a rule which might subject him to make good a loss from shipwreck for having omitted to supply the ship with proper papers, a constituent part of seaworthiness, and the omission of them an undoubted negligence.

A common carrier by sea, like other carriers, is an insurer against all losses except those occasioned by Providence, the common enemy, or those he specially guards himself against by his contract. But even then, if the loss proceeds from his own negligence, or delinquency, he will be liable to make it good. Yet he is only answerable for the consequences of his delinquency, and not for its inconsequential existence. If the goods arrive safe, he cannot be called on to answer for an intervening act of impropriety, or breach of agreement, which has produced no bad results, and the rule is the same though the cargo be damaged from a cause contemplated by the contract of affreightment, as the perils of the sea, provided the cause be not itself made efficient for injury by the negligence or other misconduct of the carrier. The judge, who tried the cause, left it fairly to the jury to say whether the injury sustained by the wheat was attributable to the deviation complained of, and they have returned a negative answer. In this I have endeavoured to show there was no error.

The whole case made here by the counsel for the plaintiff in error, is thus disposed of, and it results that the judgment must be

Affirmed.