LONZO D. WHITFORD, GUARDIAN, APPELLANT, V. HENRY KINZEL ET AL., APPELLEES.

FILED JANUARY 3, 1912.   No. 16,574.

1. **Domicile:** CHANGE OF DOMICILE. Where a wife, of sufficient mind to understand the nature and import of her act, in 1886 voluntarily leaves her home in this state, the title to which is in her husband, and returns to her kindred and former home in Indiana, and shortly thereafter the husband also permanently removes to such state, and both there reside, either together or separate and apart, this will amount to a change of residence of both, although five or six months after such removal the wife is adjudged insane and committed to a hospital for the insane; and the home of both, at the time of such commitment, would be in Indiana.

2. **Homestead:** ABANDONMENT: CONVEYANCE. And in such a case where the evidence is sufficient to show that at the time of their departure from this state neither had any intention of returning thereto, and that at said time the wife had no intention of ever again asserting her homestead rights in and to her home here, *held* an abandonment by her of her home and of her homestead rights in the land which constituted the same, and that the husband thereafter may convey the same by his individual deed.

APPEAL from the district court for Cuming county: GUY T. GRAVES, JUDGE. *Affirmed.*

*William V. Allen, William L. Dowling* and *F. D. Hunker,* for appellant.

*A. R. Oleson, contra.*

FAWCETT, J.

The controversy in this case is over the east half of the northwest quarter of section 5, township 23, range 5, in Cuming county. David C. and Frances E. Browand were husband and wife. In 1878 they settled upon the west half of the quarter section above described, and resided upon the same until 1885 or 1886. In 1882 David purchased the 80 acres in controversy, and from that

time until 1885 or 1886 both eighties were used by him in the support of his family. The major portion of the cultivated land was upon his eighty, the buildings and improvements all being upon the west eighty, which at the time they settled upon it was, and at all times since has been, the property of Mrs. Browand. One of the contentions is that, when David purchased the east eighty and brought it into servitude in the support of his family, it thereby became a part of the homestead and thereafter the homestead right attached to both eighties. In 1885, or the spring of 1886, Mrs. Browand left Nebraska and returned to the former home of both herself and husband in Noble county, Indiana, where on October 18, 1886, she was adjudged insane and a few days later was committed to the hospital for the insane at Indianapolis, Indiana. On October 21, 1891, plaintiff was by the Indiana court appointed guardian of her person and estate, and on March 6, 1909, ancillary letters of guardianship were issued to him by the county court of Cuming county, this state. On May 7, 1906, Mr. Browand conveyed the land in controversy to defendant Kinzel. In July, 1906, Kinzel and his wife conveyed a part thereof to defendant Emley, and on the same day Kinzel and wife and Emley and wife conveyed to defendant Gordon. This suit was instituted to set aside the three deeds above set out, to quiet the title in Mrs. Browand, to award plaintiff possession of the land, and for an accounting of the rents and profits. The trial resulted in findings and a decree adverse to plaintiff and quieting the title to the land in defendant Gordon. Plaintiff appeals.

The main questions argued are: (1) Did the land in controversy, purchased by the husband several years after the homestead had been established upon the west eighty, become a part of the homestead, and thereby foreclose the husband of the right to subsequently sell and convey the land without his wife's joining in the deed? (2) Did Mrs. Browand, at the time she left Ne-

braska in 1885 or 1886 for Indiana, take her departure with the intention of never returning to Nebraska, and thereby abandon her home in this state and her homestead rights in and to the land in suit? As the conclusion we have reached upon the second point is decisive of the case, we do not deem it necessary to consider the first. No good purpose would be subserved by setting out the evidence at large in this opinion. An examination of it shows that, while Mrs. Browand,. as early as 1885, manifested some pecularities, she was fully competent to take care of herself, and was not in any manner restrained of her liberty by her husband; that when she departed for Indiana she made the trip alone, visiting with a married sister in this state the night before her departure. Upon returning to Indiana she made her home with her people. Some time later Mr. Browand returned to Indiana and made his home with his people, in the same community where Mrs. Browand was then residing. Neither ever again resided in Nebraska. They continued to live in this manner, separate and apart, until she was admitted to the insane hospital. The fact that he did not go to her nor she to him, and that they seemed to have had no communication one with the other during that period of time, indicates quite strongly that they had separated as husband and wife at the time Mrs. Browand left Nebraska, and that they had both left their home here with no intention of ever again returning thereto. The evidence is insufficient to show that at the time Mrs. Browand left Nebraska she was insane, or that her mind was so unsound or unbalanced that she was not competent to understand the nature and import of what she was doing; but it is sufficient to show that she voluntarily left her husband and abandoned her home and any right of homestead that she may have had in the lands in suit, with no intention of ever returning or of ever again asserting those rights.

The judgment of the district court is therefore

AFFIRMED.