## Sumrall's Committee v. Commonwealth.

(Decided February 10, 1915.)

Appeal from Boyle Circuit Court.

1. Domicile—How Changed—Insane Person Incapable of Changing Domicile.—In order to enable one to change his legal residence or domicile or acquire a new domicile, there must be: (1) Freedom of choice; (2) bodily presence in the chosen locality; (3) an intention to remain there permanently. An insane person, being incapable of either choice or intention, cannot legally change his domicile.

2. Domicile—Of Insane Person—Where Located—Situs of Property of for Taxation—Powers of Committee.—Where an insane person, residing in this State until he became insane, was sent by his father to an asylum in another State for care and treatment, and there kept until the father's death two years later, following which, under an inquest of the Boyle County Court, he was found by a verdict of a jury and judgment of the court to be a lunatic and a committee appointed to take charge of his person and estate, the fact that the committee allowed him to remain in the asylum of another State where he had previously been maintained by the father, did not have the legal effect to fix the lunatic's domicile in such other State or remove it from Kentucky. Such domicile continued and yet remains in Boyle County, Kentucky, where the committee must statedly make settlements of the estate and list it for taxation and pay taxes thereon. The committee cannot by its mere election fix the lunatic's legal domicile in another State. It may have the power to change the

lunatic's municipal domicile, that is, from one place to another within this State, but it is without power to change his national or quasi-national domicile by removing it from this State to another State.

WM. L. WHITTINGHILL for appellant.

HENRY JACKSON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This appeal grew out of the action of the Board of Tax Supervisors of Boyle County, in listing and assessing for taxation for the year 1914, property, alleged to have been omitted, belonging to William L. Sumrall, a lunatic, held by appellant, Fidelity & Columbia Trust Company, as his committee; the latter having appealed from the action of the board of supervisors to the quarterly court, thence to the circuit court; and from the judgment of the latter court, which was also adverse to its contention, to this court. The several appeals thus prosecuted by the committee are allowed by Section 4128, Kentucky Statutes, which provides:

"Any informality or irregularity in the execution of their duties as supervisors, and any failure of duty on their part, shall not render any assessment invalid. But any taxpayer feeling himself aggrieved by the action of said board of supervisors, may appeal to the quarterly court within thirty days after the final adjournment of said board, by filing with the judge of said court a certified copy, under the hand of the clerk of said board, of the action of said board. 'And as to further appeals, he shall have the same rights as are now allowed by law in civil cases. It shall be the duty of the county attorney to appear and defend for the board.' "

In its answer or written statement filed in the courts below appellant resisted the listing of the property in its hands belonging to the lunatic, William L. Sumrall, for taxation for the year 1914, upon the ground that his residence or domicile had, prior to September 1, 1913— the date as of which property subject to taxation became assessable in this State—become fixed in the state of Maryland. The quarterly and circuit courts sustained a demurrer to the pleading in question, thereby holding the property of the lunatic subject to taxation in Boyle County for State and county purposes, and such was the judgment entered in each court.

The admitted facts show that William L. Sumrall is forty-five years of age and was born and reared in Boyle County, where he resided until 1905, when he became insane and was for the purpose of confinement and treatment sent by his father to an asylum for the insane in the state of Maryland. In January, 1907, his father, J. K. Sumrall, died, and in September of that year William L. Sumrall was by verdict of a jury and judgment of the Boyle County Court formally found to be and adjudged insane. At the same time appellant by appointment of that court duly qualified as his committee, by virtue of which it took charge of the lunatic's estate. In 1911 the Sumrall farm, situated in Boyle County near Danville, was by decree of the Boyle Circuit Court sold and the proceeds of sale distributed to the three children of J. K. Sumrall; the appellant receiving as committee the share of William L. Sumrall. J. K. Sumrall lived upon the farm in question until his death and there reared his children. William L. Sumrall's home was with his father upon this farm until he was sent by the latter to the insane asylum in Maryland in 1905. The appellant, as committee, paid taxes in Boyle County upon the estate of its ward from the time of its appointment and qualification as committee down to the year 1914.

In view of the foregoing undisputed facts it is manifest that William L. Sumrall's domicile, both of origin and selection, was and continued to be in Boyle County down to the time he became insane; that he has never recovered from his insanity and is absent from Kentucky through no choice of his own; from which it would seem to follow that his domicile continues to be and is now in Boyle County. This is certainly true unless appellant, as committee, can, by its mere election, declare him a resident of the state of Maryland, for the purpose of defeating the State of Kentucky and Boyle County of its right to assess and tax the ward's property in Boyle County.

It is not claimed in the pleading filed by appellant that its ward's property was taxed or assessed for taxation for the year 1914, or at any time, in the state of Maryland, or that it is subject to taxation in that state; but simply that it cannot be taxed in this State because of the ward's residence in the state of Maryland. Appellant is a Kentucky corporation, its place of business being in Louisville, Kentucky. When it accepted the appointment and qualified as committee for William L

Sumrall in 1907, though he was then insane and confined in an asylum of another state, he was domiciled in Kentucky. If such had not been the fact the Boyle County Court would have had no jurisdiction to appoint the committee, nor appellant the right to accept the trust. Appellant must statedly make settlement of its accounts as committee in the Boyle County Court, and if it were to relinquish the trust its resignation would have to be made to the Boyle County Court, or, if it had to be sued for a violation of the trust, the action would have to be brought in the Boyle Circuit Court.

From the appellant's appointment as committee to the present time the status of the ward and his estate has remained unchanged, and there is no claim and cannot be, that the insane ward fixed his domicile in Maryland, but asserted only that appellant, before September 1, 1913, elected to fix the ward's domicile in that state. In order to enable one of sound mind to change his domicile or acquire a new one, there must be: (1) Freedom of choice; (2) bodily presence in the chosen locality; (3) an intention to remain there permanently. But an insane person is incapable of exercising either choice or intention, nor can these twin elements essential to the acquisition of a new domicile in another state be supplied by the committee of an insane person.

An interesting discussion of the question under consideration will be found in Minor's "Conflict of Laws," on page 107 of which it is said:

"The determination of a lunatic's domicile would seem to hinge upon the question whether there has been an adjudication of lunacy, or rather whether his person has been actually committed to the custody and control of a legal guardian or committee."

In further dealing with the subject, the author on page 108 says:

"The true principle, therefore, would seem to be that a lunatic, whose person has been placed under the control of a guardian or committee, is prima facie incompetent to establish a domicile in another state, but, upon satisfactory proof of mental capacity supervening such domicile may be recognized."

As previously intimated, there is here no claim that a Maryland domicile was acquired by act of the insane ward. As a matter of law, and in point of fact, the latter's domicile, both of origin and selection, being, at the time his insanity intervened, in Boyle County, Ken-

tucky, it is yet there and cannot be in Maryland, unless the *ipsi dixit* of appellant that it has changed it to Maryland shall be allowed to have the effect of fixing it there. This aspect of the question is also considered by Mr. Minor on pages 108-9, "Conflict of Laws," where it is said:

"The question remains, what is the locality of the lunatic's domicile when he is himself too insane to choose one? Shall the guardian or committee have power to change it, or must it remain unalterably where it was when the disability was first incurred? This case is closely analogous to that of the guardian's power to change an infant ward's domicile, already discussed. As to the lunatic's municipal domicile, it seems that the guardian has the power, but not so with respect to his national or quasi-national domicile. His latter domicile will remain unchanged regardless of the place of his actual residence. He will retain the domicile he possessed before he became insane, upon the principle that a domicile once acquired is retained until another is gained."

It will be observed that the text last quoted draws a distinction between a municipal domicile and a national or quasi-national domicile. We may concede that appellant as committee has, as claimed by it, all the power that a guardian possesses with respect to the control of the person and estate of his ward, and that by virtue of such power it may change, within the bounds of the State, the municipal or county domicile of the lunatic of whose person and estate it is the committee, but we do not give our assent to the proposition that a guardian or committee has the power by the right of election to change the domicile of the ward from this State to another State. Obviously, a guardian who is likewise the parent of his ward can change the national domicile of the latter, for the home of the parent is in law that of the infant. Whether the parent who is also guardian of his infant child can, after changing his domicile and that of the infant ward to another state, continue to act in the state of the new domicile as the latter's guardian by virtue of his appointment and qualification as such in this State, is a question open to grave doubt. At any rate, we have been referred to no case so holding. The right of the parent guardian to change the ward's domicile to another state, although not necessary to the decision of the case, seems to have been so held by us in Boyd's Ex'r. v. Common-

wealth, 149 Ky., 764, a case strongly relied on in the brief of appellant's counsel. In the opinion it is said:

"The place of one's birth is his domicile of origin; during his minority, he is without power to change this, though it may be changed for him by his parents, guardian, or the person having legal custody of him. After his majority, he is free to change it, and when so changed the new domicile is termed domicile of choice."

The cases, City of Louisville v. Sherley, 80 Ky., 71; Mills Guardian v. Hopkinsville, 11 S. W., 776, also relied on by appellant's counsel, do not militate against the conclusion we have expressed, as they apply to municipal domicile alone and do not, therefore, bear upon the question of the committee's right to change the national domicile of the ward. The brief of appellant's counsel seems to take no account whatever of the distinction between the within-state or municipal domicile, and the out-of-state, national or quasi-national domicile, or to realize the fact that in this jurisdiction the right of the committee to change the domicile of the ward by removing it to another state has never been recognized.

We are unable to give our assent to the interpretation given by appellant's counsel to Section 4023, Kentucky Statutes. In our opinion the word "resides" as used in that section means a domicile outside the State, and it could not have been the intention of the legislature that every time the real or beneficial owner of intangible personal property took up his residence temporarily outside of this State that the personal representative, trustee, committee or agent in this State should hold the trust property exempt from taxation therein. The distinction between legal and actual residence is discussed and well stated in Boyd's Ex'r. v. Commonwealth, *supra,* and Tipton v. Tipton, 87 Ky., 243. A reading of all that part of Section 4023 bearing upon the exemption from taxation of intangible personal property owned by residents out of the State, but held for them within the State, will better explain our meaning. It is as follows:

"*Provided, however,* That an administrator, executor, trustee, committee, curator or agent residing in the State shall not be liable for taxes on intagible personal property, where the real or beneficial owner of such intangible personal property, held by them or any of them, resides outside of the State; but this exemption shall not apply in the case of an executor or administrator in the exercise of his office as personal representative while the

estate of a deceased person is in process of settlement and before the share of the non-resident legatee or beneficiary is set apart to him, or before said legatee is entitled to be paid his share.        *        *        *,,

The meaning of the above provision is that when the intangible personalty of the beneficiary passes to him and its situs for the purpose of taxation becomes and is at his legal residence or domicile in another State, a representative or agent in Kentucky though in possession thereof shall not be liable for a tax thereon. Such was the construction given the section, *supra,* in City of Henderson v. Barrett's Ex'r., etc., 152 Ky., 648, and it was therein held that the legislature has the power to fix the situs of intangible personal property for the purpose of taxation, and neither Section 4020, Kentucky Statutes, fixing the situs of such property at the residence of the real or beneficial owner, and not at the residence of the fiduciary or agent having custody or possession of same, nor Section 4023, providing that an administrator, executor, trustee, committee, curator or agent residing in the State, shall not be liable for taxes on intangible personal property where the real or beneficial owner of such intangible personal property held by them or any of them reside outside of the State, is unconstitutional.

In the instant case appellant, as committee of William L. Sumrall, cannot claim that his estate in its hands is, by virtue of Section 4023, Kentucky Statutes, exempt from taxation in this State and in Boyle County because the latter, being confined in an insane asylum in Maryland, may for that reason be said to have an actual residence outside of Kentucky; for his legal residence or domicile, as a matter of law, is in Kentucky and has remained unchanged regardless of the place of his confinement or actual residence. The rule of law making Boyle County, Kentucky his legal residence or domicile, cannot be changed by an election on the part of his committee to fix it in Maryland or elsewhere outside of Kentucky.

As the circuit court did not err in sustaining the demurrer to the appellant's answer or statement of its defense, the judgment is affirmed.