### COPPEDGE v. CLINTON et al.
### No. 1034.

Circuit Court of Appeals, Tenth Circuit.
July 28, 1934.

See, also (D. C.) 2 F. Supp. 935.

W. V. Pryor, of Sapulpa, Okl., for appellant.

Creekmore Wallace, of Oklahoma City, Okl. (Tom Wallace, of Sapulpa, Okl., and Wayne H. Lasater, of Dallas, Tex., on the brief), for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

From April 27, 1923, to May 12, 1928, Coppedge was guardian of the person and estate of Wilson Clinton, an incompetent full-blood Creek Indian, under appointment of the county court of Creek County, Oklahoma. On the latter date Coppedge resigned as such guardian.

On May 14, 1928, the American National Bank of Bristow, Oklahoma, was appointed by the county court of Creek County, as guardian of Wilson Clinton.

On May 12, 1928, Coppedge filed his final report in which he set forth receipts aggregating $261,768.10, and credits totaling $263,000. Wilson Clinton filed exceptions to such report in which he challenged certain specific items claimed as credits by Coppedge aggregating $147,604.47.

On February 14, 1931, Wilson Clinton by his next friend Cubah Clinton commenced this suit against Coppedge for an accounting. Creekmore Wallace was appointed guardian ad litem for Wilson Clinton.

The complaint alleges that Wilson Clinton is a resident and citizen of Garland County, Arkansas. It omitted any allegation as to the citizenship of Coppedge. The answer of Coppedge denied that Wilson Clinton was a citizen of Arkansas. The court found that at the time this suit was commenced, Wilson Clinton was a resident and citizen of Arkansas, and that Coppedge was a resident and citizen of Oklahoma.

By a supplemental answer, Coppedge alleged that on February 2, 1932, the county court of Creek County entered a judgment upon the exceptions to such final report in which it determined "all the issues in controversy herein," and that such judgment "is res adjudicata of all such issues and a bar to further action in this court herein."

At the trial of the instant case, Coppedge offered in evidence a purported judgment of the district court of Creek County on appeal from a judgment of the county court of that county, which district court judgment sustained the exceptions to items aggregating $33,818, and in all other respects approved the report. The district court judgment had not been pleaded by Coppedge. The trial court rejected the offer on the ground that the district court judgment was not a bar under the doctrine of res judicata, because an appeal therefrom was then pending in the supreme court of Oklahoma.

This is another of those all too common cases in Creek County where a white guardion has looted the estate of his Indian ward. The findings of the trial court established gross frauds and flagrant breaches of trust on the part of Coppedge in the administration of his ward's estate. The trial court concluded that Coppedge should account for

items aggregating $86,971.96, less $30,000 paid Wilson Clinton on December 16, 1932, by the United States Fidelity & Guaranty Company as surety on the guardianship bond of Coppedge, and gave judgment against Coppedge for $56,971.96 with interest at 6% from September 6, 1933.

■ Coppedge contends that the court was without jurisdiction because the requisite diversity of citizenship was lacking. He asserts that Wilson Clinton, being an incompetent domiciled in Oklahoma, could not change his domicile and citizenship to Arkansas.

The evidence established that Wilson Clinton moved to Arkansas shortly before the suit was filed, with the consent of his guardian, but without the formal consent and approval of the county court of Creek County.

Section 6587, C. O. S. 1921, provides that a guardian "may fix the residence of the ward at any place within the State, but not elsewhere, without permission of the court." Laughlin v. Williams, 76 Okl. 246, 185 P. 104, 105.

Whether an incompetent may change his domicile depends on the extent to which his reason is impaired. A comparatively slight degree of understanding is required.[1] It is sufficient if he understands the nature and effect of his act. Whitford v. Kinzel, 90 Neb. 573, 133 N. W. 1124; Concord v. Rumney, 45 N. H. 423, 428; Conflict of Laws, Minor, p. 107.

Where a person has been adjudged an incompetent and placed under the care and control of a guardian or committee, a presumption arises that he has not sufficient mental capacity to change his domicile, but the presumption may be rebutted by satisfactory proof that he possesses the requisite mental capacity.

Mr. Minor, in his work on Conflict of Laws at page 108, says:

"The true principle therefore would seem to be that a lunatic, whose person has been placed under the control of a guardian or committee, is prima facie incompetent to establish a domicil in another State, but, upon satisfactory proof of mental capacity supervening, such domicil may be recognized."

See, also, Mowry v. Latham, 17 R. I. 480, 23 A. 13; Talbot v. Chamberlain, 149 Mass. 57, 20 N. E. 305, 3 L. R. A. 254; In re Fidelity Trust Co. of Newark, 37 Misc. 118, 57 N. Y. S. 361; Sumrall's Committee v. Commonwealth, 162 Ky. 658, 172 S. W. 1057, 1058.

In Laughlin v. Williams, supra, the court held that section 6587, supra, regulates changes in domicile within the state by an incompetent under guardianship, and that such an incompetent may not effectually change his domicile within the state without the knowledge or consent of his guardian. We set out the pertinent portions of the opinion in Note 2.[2]

---

[1] Laughlin v. Williams, 76 Okl. 246, 185 P. 104; Cadwalder v. Pyle, 95 Kan. 337, 148 P. 655, 656; Holyoke v. Haskins, 22 Mass. (5 Pick.) 20, 26, 16 Am. Dec. 372; Concord v. Rumney, 45 N. H. 423, 428; Talbot v. Chamberlain, 149 Mass. 57, 20 N. E. 305, 3 L. R. A. 254; Whitford v. Kinzel, 90 Neb. 573, 133 N. W. 1124; In re Fidelity Trust Co., 27 Misc. 118, 119, 57 N. Y. S. 361; Mowry v. Latham, 17 R. I. 480, 23 A. 13; Culver's Appeal, 48 Conn. 165, 172; Restatement, Conflict of Laws, § 41; Note 30 A. L. R. p. 607.

[2] "It is urged that this case comes within the rule announced in 14 Cyc. 848, subdivision 3, which is as follows:

" 'The mere fact that a person is of unsound mind does not necessarily preclude him from establishing his domicile, as the question must depend entirely upon the extent to which his reason has been impaired. In general it may be stated that but a comparatively slight degree of understanding is required in order that his action may be recognized.'

" * * * If the evidence showed that Watson intended to change his domicile, we might readily agree with counsel that his mind was not sufficiently impaired to prevent his so doing, but we cannot agree that the above-quoted rule has any application in this state, where the question of fixing the residence of minors, incompetents, and persons of unsound mind is regulated by statute.

"Under sections 6538 and 6539, Rev. Laws of 1910, county courts of this state are authorized to appoint guardians of the persons and estates of persons adjudged to be mentally incompetent to manage their property by complying with the procedure prescribed by said sections. Under section 3333 a guardian appointed by a court has power over the person and property of the ward, unless otherwise ordered.

"Section 3334 is as follows:

" 'A guardian of the person is charged with the custody of the ward, and must look to his support, health and education. He may fix the residence of the ward at any place within the state, but not elsewhere, without permission of the court.'

"It is unnecessary for us to determine what the weight of authority is in other

It would seem to follow from this decision that the statute undertakes to inhibit such an incompetent from changing his domicile from within to without the state, except with the permission of the court having jurisdiction of the guardianship.

■ But a person not under legal restraint, who has reached his majority and possesses the requisite mental capacity, may change his domicile at will. The right to change one's domicile is a natural right. Cornelison v. Blackwelder, 38 Okl. 1, 131 P. 701; McGill v. Miller, 183 Ark. 585, 37 S.W.(2d) 689, 691; Seibold v. Wahl, 164 Wis. 82, 159 N. W. 546, Ann. Cas. 1917C, 400; Pickering v. Winch, 48 Or. 500, 87 P. 763, 9 L. R. A. (N. S.) 1159; Boyd v. Commonwealth, 149 Ky. 764, 149 S. W. 1022, 42 L. R. A. (N. S.) 580, Ann. Cas. 1914B, 481; In re Newcomb's Estate, 192 N. Y. 238, 84 N. E. 950. See, also, Slaughter House Cases, 16 Wall. 36, 80, 21 L. Ed. 394; United States v. Wheeler, 254 U. S. 281, 293, 41 S. Ct. 133, 65 L. Ed. 270; Paul v. Virginia, 8 Wall. 168, 180, 19 L. Ed. 357; Marcus Brown Holding Co. v. Pollak (D. C. N. Y.) 272 F. 137, 141:

Therefore, if Wilson Clinton actually removed from Oklahoma to Arkansas, and with the requisite mental capacity formed the settled intent and purpose to remain in the latter state indefinitely, and took up his actual residence there, we fail to see how the laws of Oklahoma could have extra-territorial force and effect, and prevent him from acquiring a domicile in Arkansas.

■ The burden was upon Wilson Clinton to establish that he had sufficient mental capacity to adopt a new domicile in Arkansas. The record sets forth no evidence with respect to the mental capacity of Wilson Clinton; and we must presume that he lacked the mental capacity to establish a new domicile, until the contrary is shown.

■ Coppedge contends that the matters involved were probate in character and committed exclusively to the jurisdiction of the county court of Creek County, and therefore the trial court did not have jurisdiction over the subject-matter. But the matters involved were not purely probate in character; the ward charged fraud on the part of his former guardian and sought an accounting, and the suit was inter partes.

A court of equity has inherent jurisdiction of suits by wards against their guardians for an accounting and settlement. This is especially true where the ward alleges fraud on the part of the guardian. Schindler v. Spackman (C. C. A. 8) 16 F.(2d) 45, 48; Chapman v. American Surety Co., 261 Ill. 594, 104 N. E. 247, 251; Pomeroy's Equity Jurisprudence (4th Ed.) Vol. 3, § 1097; Vol. 4, §§ 1420–1; Vol. 1, § 280, p. 523; Vol. 5, § 2358.

The fact that the county courts of Oklahoma may exercise a like jurisdiction,[3] does not deprive a federal court of equity of jurisdiction in a suit brought by a ward against his guardian for an accounting. Waterman v. Canal-La. B. & T. Co., 215 U. S. 33, 43, 30 S. Ct. 10, 54 L. Ed. 80; McClellan v. Carland, 217 U. S. 268, 281, 30 S. Ct. 501, 54 L. Ed. 762; Hall v. Cottingham (D. C. S. C.) 55 F.(2d) 659, 660, 663; O'Connor v. Slaker (C. C. A. 8) 22 F.(2d) 147, 149.

■ Finally, Coppedge contends that the court erred in not admitting the judgment of the district court of Creek County.

Whether, pending an appeal, a judgment has the essential characteristics of finality to constitute it an estoppel under the doctrine of res judicata, is a question upon which the courts are not in accord. Freeman on Judgments (4th Ed.) vol. 1, § 328.

In certain jurisdictions it is held that, pending an appeal, a judgment lacks that character of finality which is requisite to constitute it an estoppel.[4]

---

jurisdictions as to the power of a guardian to fix the residence of his ward at any place within the state, for the above-quoted provision is clear and explicit and is controlling.

"It appearing from the record that the alleged effort of Watson to change his domicile from Okfuskee county to Seminole county was without the knowledge or consent of his duly appointed, qualified, and acting guardian, the trial court was right in holding that his residence, at the time of his death, was in Okfuskee county, Okl."

[3] In re Talomase's Estate, 98 Okl. 212, 225 P. 156, 158; Howe v. Tarloshaw, 103 Okl. 268, 225 P. 983, 985; C. O. S. 1921, § 1461.

[4] City of Tulsa v. Wells, 79 Okl. 39, 191 P. 186, 191; Pellissier v. Title Guarantee & T. Co., 208 Cal. 172, 280 P. 947, 951; Jennings v. Ward, 114 Cal. App. 536, 300 P. 129, 130; Robinson v. El Centro Grain Co., 133 Cal. App. 567, 24 P.(2d) 554, 556; Brown v. Campbell, 100 Cal. 635, 35 P. 433, 38 Am. St. Rep. 314; Naftzger v. Gregg, 99 Cal. 83, 33 P. 757, 37 Am. St. Rep. 23; Vance v. Heath, 42 Utah, 148,

In other jurisdictions it is held that the pendency of an appeal from a final judgment does not prevent such judgment, so long as it remains unreversed and unmodified, from being pleaded and proved as an estoppel.[5]

In City of Tulsa v. Wells, 79 Okl. 39, 191 P. 186, 191, the court said:

"The contention of counsel that the judgment in favor of the defendant in the case of the plaintiff against the traction company is a bar to this action cannot be sustained for the additional reason that the record discloses by stipulation that such judgment had not become final when this case was tried, as an appeal therefrom had been taken by the plaintiff to this court. The rule in such cases is found in Black on Judgments, vol. 2, § 510, and is as follows:

" 'In many states it is held that the pendency of the appeal suspends operation of the judgment in respect to all its usual effects, and hence, the judgment, not becoming final while the appeal remains undetermined, it cannot be pleaded in bar, in the interval, nor used in evidence as an estoppel.'

"Such was the holding of the Supreme Court of California in Di Nola v. Allison et al., 143 Cal. 106, 76 P. 976, 65 L. R. A. 419, 101 Am. St. Rep. 84; also, in the case of Purser v. Cady, 120 Cal. 214, 52 P. 489. This rule was adhered to by this court, in the case of Stuart v. Coleman [78 Okl. 81], 188 P. 1063 [10 A. L. R. 411], not yet officially reported, second paragraph of syllabus, which is as follows:

" 'Where the law gives a right of review to an appellate court, all persons are necessarily charged with notice thereof, and lis pendens is adequate to give a litigant protection until he can pursue all the remedies to which he is entitled in the action, and therefore, although a judgment of final decree has been entered, the cause is deemed to be pending while the right to prosecute it further by appeal remains.' "

In Roberts v. Anderson (C. C. A. 10) 66 F.(2d) 874, 875, this court said:

"It is likewise settled, by the cited decisions, that a valid determination by the county court under the quoted statute is binding upon all other courts to which the same question may be subsequently submitted. If an appeal is pending from such determination, it nevertheless is conclusive until set aside.

129 P. 365, 367; State Bank of Sevier v. American Cement & P. Co., 80 Utah, 250, 10 P.(2d) 1055, 1069; State Life Ins. Co. v. Wilson (Tex. Civ. App.) 57 S.W.(2d) 355, 357–358; Fidelity Union Cas. Co. v. Hanson (Tex. Com. App.) 44 S.W.(2d) 985, 987; Mente & Co. v. Anciens Etablissements V. - D. & Cie, 177 La. 829, 149 So. 492; McCusker v. Commonwealth Cas. Co., 106 N. J. 116, 148 A. 897; State v. Schmoll (Mo. App.) 37 S.W.(2d) 972; Smith v. Lathrop, 44 Pa. 326, 84 Am. Dec. 448; Delk v. Yelton, 103 Tenn. 476, 53 S. W. 729; Southern Railway v. Brigman, 95 Tenn. 624, 32 S. W. 762; Souter v. Baymore, 7 Pa. 415, 47 Am. Dec. 518; Bryar v. Campbell, 177 U. S. 649, 654, 20 S. Ct. 794, 44 L. Ed. 926 (Pa. judg.); Edwards v. Bodkin (D. C. Cal.) 267 F. 1004 (Cal. judg.); Blue Goose Min. Co. v. Northern Light Min. Co. (C. C. A. 9) 245 F. 727 (Cal. judg.); Contra Costa Water Co. v. City of Oakland (C. C. Cal.) 165 F. 518, 529 (Cal. judg.); Tampa W. W. Co. v. City of Tampa (C. C. Fla.) 124 F. 932; Eastern Bldg. & L. Ass'n v. Welling (C. C. S. C.) 103 F. 352; Sharon v. Hill (C. C. Cal.) 26 F. 337 (Cal. judg.).

[5] Reed v. Allen, 286 U. S. 191, 199–201, 52 S. Ct. 532, 76 L. Ed. 1054, 81 A. L. R. 703; Deposit Bank v. Frankford, 191 U. S. 499, 508–512, 24 S. Ct. 154, 48 L. Ed. 276; Crescent City Live Stock Co. v. Butchers' Union S. H. Co., 120 U. S. 141, 152–153, 7 S. Ct. 472, 30 L. Ed. 614; Ransom v. City of Pierre (C. C. A. 8) 101 F. 665, 669; By-Products Recovery Co. v. Mabee (D. C. Ohio) 288 F. 401; Walz v. Agricultural Ins. Co. (D. C. Mich.) 282 F. 646; Straus v. American Publishers' Ass'n (C. C. A. 2) 201 F. 306, 310; Oregonian Ry. Co. v. Oregon Ry. & N. Co. (C. C. Or.) 27 F. 277, 284; Smith v. Schreiner, 86 Wis. 19, 56 N. W. 160, 39 Am. St. Rep. 869; Parkhurst v. Berdell (Ct. App. N. Y.) 110 N. Y. 386, 18 N. E. 123, 6 Am. St. Rep. 384; State v. Spratt, 150 Minn. 5, 184 N. W. 31; Watson v. Richardson, 110 Iowa, 698, 80 N. W. 416, 80 Am. St. Rep. 331; Scott v. Wilson, 150 Iowa, 202, 129 N. W. 812; Moore v. Williams, 132 Ill. 591, 24 N. E. 617, 619; People v. Rickert, 159 Ill. 496, 42 N. E. 884, 886; Wilcox Trux v. Rosenberger, 169 Minn. 39, 209 N. W. 308, 310, 211 N. W. 822; Boynton v. Chicago Mill & Lbr. Co., 84 Ark. 203, 105 S. W. 77; Corinth Bk. & T. Co. v. Lawler, 218 Ala. 83, 117 So. 620; Collier v. Alexander, 142 Ala. 422, 38 So. 244; Reese v. Damato, 44 Fla. 692, 33 So. 462; Seattle Nat. Co. v. Gilmore, 167 Wash. 102, 9 P.(2d) 95, 98; Kaufman v. Klain, 69 Wash. 113, 124 P. 391, 392; Jaloff v. United Auto Indemnity Exchange, 121 Or. 187, 253 P. 883, 886; Messing v. Faulkner, 83 Kan. 115, 109 P. 1001, 1002.

Even though a judgment is later reversed, it is an adjudication while it remains in force."

In Roberts v. Anderson, supra, the question was only incidentally involved, and we announced what we conceived to be the correct general rule. Tulsa v. Wells, supra, was not considered because in that case, as in the instant case, it was not cited either in the briefs or oral argument. However, our statement is incorrect when applied to a judgment of an Oklahoma court. 28 USCA § 687, provides that "the records and judicial proceedings of the courts of any State * * * shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." The decisions of the court of last resort of a state, as to the effect of an appeal on a judgment rendered by a court of that state, and the status of the judgment with respect to its finality pending an appeal therefrom, are binding on the federal courts. Union & Planters' Bank v. City of Memphis (C. C. A. 6) 111 F. 561, 570-572; Id., 189 U. S. 71, 75, 23 S. Ct. 604, 47 L. Ed. 712; Contra Costa W. Co. v. City of Oakland (C. C. Cal.) 165 F. 518, 529; Sharon v. Hill (C. C. Cal.) 26 F. 337, 346; Hampton v. M'Connel, 3 Wheat. 234, 4 L. Ed. 378; Mills v. Duryee, 7 Cranch. 481, 482, 3 L. Ed. 411; Thompson v. Whitman, 18 Wall. 457, 461-462, 21 L. Ed. 897. See, also, Bryar v. Campbell, 177 U. S. 649, 654, 20 S. Ct. 794, 44 L. Ed. 926.

We conclude that the judgment of the district court of Creek County was not a bar under the doctrine of res judicata, and could not be pleaded or proved as a bar to the instant suit.

Coppedge does not challenge the correctness of the findings and decree of the trial court, provided it had jurisdiction and the judgment of the district court of Creek County was not conclusive on the trial court.

It follows from what we have said that the court had jurisdiction and was free to decide the issues, provided the requisite diversity of citizenship existed. Under the circumstances we see no reason for a retrial on the merits. Upon authority of St. Louis Smelt. & Ref. Co. v. Nix (C. C. A. 8) 272 F. 977; Ward v. Morrow (C. C. A. 8) 15 F. (2d) 660; Chicago & A. R. Co. v. Allen (C. C. A. 7) 249 F. 280; Chicago, R. I. & P. R. Co. v. Stephens (C. C. A. 6) 218 F. 535; Grand Trunk W. Ry. v. Reddick (C. C. A. 7) 160 F. 898, and Parker-Washington Co. v. Cramer (C. C. A. 7) 201 F. 878, the cause is remanded for trial of the jurisdictional issue, with directions that if Wilson Clinton establishes to the satisfaction of the trial court that he has sufficient mental capacity to adopt a domicile in the State of Arkansas, and in fact adopted such domicile and was a citizen of that state at the time of the commencement of this action, the decree will be re-entered. If Wilson Clinton is not able to establish those facts, then the trial court will set aside the decree and dismiss the suit for want of jurisdiction.